D. CLAUDE HANDY, JOHN W. WILLIAMS, GEORGE N.
POTEE and JOHN W. SHIPLEY *vs.* JOHN H. HOP-
KINS and others.   D. CLAUDE HANDY, JOHN W.
WILLIAMS, GEORGE N. POTEE, THOMAS H. ARNOLD
and JOHN W. SHIPLEY *vs.* SAME.

*Authority of the Circuit Court under sec. 53, of Art. 35, of the
Code, in respect of Contested elections—Sufficiency of allega-
tions on the part of the Contestants, to warrant Inquiry by the
Court as to the Legality and validity of an Election of County
Commissioners—Jurisdiction of the Circuit Court under sec.
53, of Art. 35—Parties not at liberty to Repudiate their own
acts and professions—Statutory jurisdiction without express
power of Appeal.*

The power of deciding cases of contested election with which the
Circuit Court is invested by section 53, of Article 35, of the Code,
includes authority to decide all matters and questions involved in
such contest.

The allegations in the case of a contested election on the part of the
contestants, that they were duly elected to the office of County
Commissioners at an election held on a day specified, and that the
returns of the polling of that election, upon which the contestees
were declared elected, were false and fraudulent, are sufficiently
broad and comprehensive to found the inquiry, not only as to who
of the parties claiming were elected, but whether there had been
any legal and valid election at all.

The Circuit Court for Anne Arundel County, having, by virtue of sec-
tion 53, of Article 35, of the Code, rightly assumed to hear the case
of a contested election for County Commissioners, and having
declared against the pretensions of the contestants, had full power
and jurisdiction under the statute likewise to declare that the con-
testees were *not* duly elected, and that the office was vacant; and
to direct that notice of the vacancy be given to the Governor, that
he might fill it under the Act of 1880, ch. 210.

Four persons were elected County Commissioners at the general elec-
tion of 1879, and were in office at the time of the election of 1881.

They were candidates for re-election, and together with a fifth person were returned as elected, at the last mentioned election; and they were thereupon duly commissioned as such newly elected Commissioners. They accepted the commissions thus issued, and professed to enter upon the discharge of the duties of their office, in pursuance and by virtue of the last election and commissions. They in no manner claimed that they were in office, or were entitled to hold office, by virtue of the election of 1879, but, on the contrary, they distinctly claimed that they had been duly elected at the election of 1881, and that they were rightly holding under that election. HELD:

That under such circumstances, the Court having declared the election of 1881, null and void, these parties could not be heard to claim that they were entitled to hold over by virtue of the election of 1879.

Where a special statutory jurisdiction, without express power of appeal, is conferred upon the Circuit Court in the matter of a contested election of County Commissioners, and an appeal is taken from an order of the Circuit Court declaring the election void, and the office vacant, the Court of Appeals is not authorized to do anything more than decide the question whether the case as tried and determined was within the limits of the special jurisdiction conferred, and being satisfied that it was, the appeal must be dismissed.

APPEALS from the Circuit Court for Anne Arundel County.

The appellees filed a petition in the Circuit Court for Anne Arundel County, contesting the election of D. Claude Handy, John W. Williams, John W. Shipley, George N. Potee and Thomas H. Arnold, as County Commissioners. The petition alleged that the said Handy, Williams, Shipley, Potee and Arnold had been returned as duly elected County Commissioners at the general election in November, 1881; and that they had entered upon the administration of the said offices; and that in the fifth and sixth election districts of Anne Arundel County, the election was fairly conducted, and the result of the voting truly ascertained and reported; and that in all

the other districts of said county, the election was not fairly conducted, and the result of the voting was not truly ascertained, and the returns from these districts were false, fraudulent and pretended.    The petition further alleged, that according to the only true and legal returns of the election, the petitioners were duly elected County Commissioners for Anne Arundel County.   It then alleged that there was a wicked and fraudulent conspiracy between the County Commissioners for Anne Arundel County and certain unknown persons, for the purpose of procuring that the said Handy, Williams, Shipley, Potee and Arnold should be falsely and fraudulently returned as elected; and that the said Handy, Williams, Shipley and Potee were members of the Board of County Commissioners.   It then, with great particularity of detail, assailed the election in the first, second, third, fourth and eighth districts, alleging specifically, in reference to each one of them that the election held therein was null and void; and that the returns thereof were false and fraudulent, and ought not to have been counted; and stated that the petitioners contested the election of Handy, Williams, Shipley, Potee and Arnold, and averring that the petitioners were duly elected County Commissioners, and were entitled to receive the *per diem* allowed by law for the performance of the duties of the office, and to exercise the functions thereof.   Handy, Williams, Shipley, Potee and Arnold, moved the Court to dismiss the petition for want of jurisdiction, and the Court overruled the motion.   They then filed an answer denying the charges of fraud, conspiracy and illegality, and alleging that the election was fairly, honestly and legally conducted.

After a hearing, the Court adjudged that the election was null and void, and that the offices of County Commissioners had become vacant. by the failure of the voters of said county to elect persons to fill said offices; and the clerk of the Court was directed to certify to the Governor

of the State, the existence of said vacancies, to the end, that they might be filled by his appointment, in pursuance of the Act of 1880, ch. 210. The Court further adjudged that inasmuch as the charges of fraud and conspiracy against the respondents had not been sustained by proof, and the petitioners had not shown that they were elected, the costs of the proceeding should be equally divided between them.

From this order, Handy, Williams, Potee and Shipley, claiming to hold over as County Commissioners by virtue of the election in 1879, appealed. They also, together with Arnold, took a second appeal.

The cause was argued before GRASON, ALVEY, ROBINSON, and RITCHIE, J.

*Wm. Shepard Bryan,* for the appellants.

The Circuit Court derives its jurisdiction exclusively from sec. 53, of Art. 35, of the Code. It is entirely statutory; conferred by the statute, it is limited by the statute, and cannot exceed it. It is provided that contested elections of this kind shall be decided by the Court. A contest in a Court of law is a conflict between plaintiff and defendant; and it imposes on the Court the duty of deciding between their opposing averments. Demands are asserted on one side and resisted on the other. The Court is required to decide the controversy. In all our jurisprudence, the functions of the Court are confined to the matters in controversy. The judgment is always to be rendered upon the *allegata* and *probata.* The proofs cannot be considered, unless they support the matters alleged. Testing the contest before the Court by this universal rule, which is necessary for the orderly and intelligent administration of justice, we find that the Court was merely called upon by the petition in this case to determine whether the petitioners were elected

County Commissioners.   The Court decided that they were not elected, and this decision terminated the controversy.   But the Court further decided that the election was *null and void*, and that the Commissioners in office at the time of the election did not hold until their successors were elected and qualified, but that the Governor had power to appoint their successors under the Act of 1880, ch. 210.   In making this decision, it is submitted that the Court exceeded the jurisdiction to decide the controversy, which was the only power conferred upon it by the statute.   *State vs. Gaither,* 11 *G. & J.,* 160, 170; *Mackall vs. Jones,* 5 *G. & J.,* 65; *Turner vs. Walker,* 3 *G. & J.,* 388, 389; *Ridgely vs. Toram,* 2 *Md. Ch. Dec.,* 303; *Gibbs vs. Cunningham,* 4 *Md. Ch. Dec.,* 322; *Chambers vs. Chambers,* 4 *Gill & J.,* 420; *Berry vs. Pierson,* 1 *Gill,* 247; 2 *Parson's Reps. (Penn.,)* 3.

The decision against the Commissioners of 1879 was not only *dehors the record*, but was erroneous; because, by the Constitution, the old Commissioners were entitled to their offices until their successors were elected and qualified; and the Act of 1880, ch. 210, cannot take away their constitutional rights.   But even by the terms of the Act of 1880, the Governor had no power to appoint except in case of a vacancy; and inasmuch as the Commissioners of 1879 were entitled to hold until their successors were elected and qualified, there was no vacancy, even supposing the election was null and void.   *Watkins vs. Watkins,* 2 *Md.,* 341; *Smoot vs. Somerville, supra p.* 84.

The reasoning of the Court in *Sappington vs. Scott,* 14 *Md.,* 55, sufficiently shows that where nothing is expressly said in the Constitution about holding over, that, *ex necessitate*, the officer must hold until his successor is elected and qualified.

As the judgment was beyond the jurisdiction of the Court, it is the subject of appeal.   *Kinnear and Willis vs.*

*Lee and Reynolds*, 28 *Md.*, 488; *Mears vs. Remare*, 33 *Md.*, 246–250.

In the opinion of the Court below, it is stated that "a contested election is not a suit for the adjudication of private rights simply." And the Court proceeds to argue that it is a proceeding in which the people are primarily interested, and that it "should adjudge and decree in such manner as public justice, as well as private rights, may require." The statute under which the petition was filed makes it a private suit, with all the incidents of other private suits, and gives no power to any one to intervene, except the parties. And this is the view of this Court. In *Magruder vs. Swann*, 25 *Md.*, 204, the Court show that a "*contested election*," is simply "*a contest between the candidates at such election*," and nothing more; and to show the private nature of the proceeding, they say "An office is often the most valuable property a person possesses." And in *Warfield vs. Latrobe*, 46 *Md.*, 131, they carefully state the wide difference between a contest of this kind, and the public proceeding in the name of the people in right of their sovereignty. A contest for an office by means of a petition of this kind, is no more a public proceeding than a *mandamus* for the same office would be. The public interest is the same in each case.

The opinion of the Court below was founded on decisions made in other States, where the statutes are exceedingly different from ours, as may be readily seen by examining these references. Take two instances: the reference to *McCreary on Elections*, (*2nd Ed.*,) *sec.* 316, is founded, among other authorities, on two Pennsylvania cases, and we see by reference to them, (*Mann vs. Cassidy*, 1 *Brewster*, 25 *and* 26, and *Colling's Case, Brightley's Election Cases*, 513,) that the proceeding is authorized by statute to be instituted by any voters who choose to complain; and that it is not regarded as the complaint of the candi-

date, and the defeated candidate is not looked upon as a party. In fact, under the Pennsylvania statute, the candidates have the same rights as any other citizens, but no more. And the case of *Barry vs. Lauck,* 5 *Caldwell's Repts.,* 588, relied upon in the Court's opinion, was decided on the 907th section of the Tennessee Code, which, in express terms, gave the Court power to annul the election. And the doctrine stated in *Cooley's Constitutional Limitations,* is founded on the assumption that the Courts have an inherent common law right to prevent the usurpation of an office by a person not lawfully elected; and a case is cited where the Supreme Court of Wisconsin removed a Governor from office, although the Constitution provided no means of ousting him. It is needless to say that the Courts of Maryland have no such powers, and would never claim them.

The expressions in the Court's opinion in *Anderson vs. Levely,* 58 *Md.,* 192, about the power of a Court to declare an election void, cannot reasonably be applied to a case where the pleadings exclude such question. The language must be referred to a case in which the question was properly presented to the Court by apt averments on the record. Any other construction of the Court's opinion would be contrary to the accepted canons of interpretation.

*S. Thos. McCullough,* and *William T. Iglehart,* filed a brief in behalf of the appellants.

*James M. Munroe,* and *Frank H. Stockett,* for the appellees.

If the appellants Handy, Williams, Potee and Shipley, claiming to hold over as County Commissioners of Anne Arundel County, by virtue of the election in 1879, had any rights in the premises, they were only such as appertained to them in their capacity of County Commissioners of Anne Arundel County, constituted a body corporate

by the laws of the State, and therefore, if they could appeal at all from the decision of the Court below, they must appeal as a corporation, and not as individuals. This point has been conclusively determined by the decision of this Court in the case of *Jones and Anderson vs. Keating, et al.*, 55 *Md.*, 145, *et seq.*

The appellants have been in nowise injured or prejudiced by the decision of the Court below; they were not parties to these proceedings, as County Commissioners of Anne Arundel County under the election of 1879, in the trial of this case below; no issues touching the election and qualification of the members of that Board, under the election of 1879, were presented by the proceedings in this cause, nor is there any proof in the record showing who were so elected and qualified, and who discharged the duties of the Board of County Commissioners of Anne Arundel County for the year 1879. *Code of Pub. Gen. Laws, Art.* 5, *sec.* 12; *Rule* 4 *of Court of Appeals*, 29 *Md.*, 2; *Rev. Code, Art.* 17, *sec.* 7, *p.* 764; *Cockey, Adm'r vs. Ensor*, 43 *Md.*, 267; *Bridendolph vs. Zeller's Ex'rs*, 5 *Md.*, 58; *Tyson vs. Shuey*, 5 *Md.*, 553; *Davis vs. Leab*, 2 *G. & J.*, 302; *Brooks vs. Suter*, 36 *Md.*, 64; *Davis vs. State*, 39 *Md.*, 356.

The jurisdiction of the Court below, is a *special, limited and exclusive jurisdiction* from which no appeal will lie. *Code, Art.* 35, *secs.* 53 *and* 54; *Anderson vs. Levely*, 58 *Md.*, 192; *Warfield vs. Latrobe*, 46 *Md.*, 123.

Supposing, for the sake of the argument, that the appellants had the right to appeal in these cases, and that the appeals were properly taken, it is insisted,

1st. That the County Commissioners elected in 1879, do not hold over until the election and qualification of their successors.

2nd. That if such were the law, the appellants are estopped, under the circumstances of this case, from setting up any such claim.

3rd. That the order of the Court below, was in conformity with the law in such cases made and provided, and its judgment should be affirmed.

1st. The County Commissioners elected in 1879, do not hold over until the election and qualification of their successors.

The Constitution provides, that County Commissioners shall be elected *every two years,* and the Act of Assembly provides for the filling by the Governor, of vacancies, in the office of County Commissioner, howsoever the vacancy may occur. *Constitution of* 1867, *Art.* 7, *sec.* 1; *Act of* 1880, *ch.* 210.

This section of the Constitution, and this Act of Assembly, are to be read together, as constituting the law of Maryland, in reference to filling the office of County Commissioner. And this view of the law in reference to the case of County Commissioner, is even stronger than the case of sheriff, in which latter case, this view of the law has been expressly taken. *Anderson vs. Levely,* 58 *Md.,* 192.

In the cases of Clerks of Courts, and Registers of Wills, where the Constitution provides, that these officers shall hold office for a certain number of years, *and until the election of their successors,* the Court of Appeals has interpreted the words, "*until the election of their successors,*" to mean, "until the election *and qualification* of their successors." *Sappington vs. Scott,* 14 *Md.,* 40.

The provisions of the Constitution of 1867, framed subsequent to the decision of *Sappington vs. Scott,* 14 *Md.,* are in accordance with that decision, and in the cases of Clerks of Courts, Registers of Wills and Sheriffs, provide that they shall hold office until *the election and qualification* of their successors. With this plain provision of the law before them, this Court has already decided in the before quoted case of *Anderson vs. Levely,* 58 *Md.,* 192, that in the event of the contest of an election of sheriff, if the

Court below declare the election null and void, there is a vacancy in the office which they shall certify to the Governor, in order that he may fill it in pursuance of law.

What the Constitution means, when it says that Clerks. of Courts, Registers of Wills, Sheriffs, &c., shall hold office for a certain number of years, *and until the election and qualification of their successors* is, that where there has. been an election, there shall occur no *inter-regnum* by the expiration of the term of office of the incumbent, before the officer-elect shall enter upon his office, but that the term of office of the incumbent shall be extended up to the time of the qualification of the officer-elect. With no other view of the Constitution, is the case of *Anderson vs. Levely,* consistent. *Constitution.*1867, *Art.* 4, *sec.* 44; *Anderson vs. Levely,* 58 *Md.,* 192.

But the case of *Sappington vs. Scott,* (14 *Md.,* 40,) is in no way applicable to the case at bar. That case construed a doubtful provision of the Constitution of 1850, by expanding the meaning of the words, "until the election of their successors," into, "until the election *and qualification* of their successors." And the framers of the Constitution of 1867, in the light of that decision, made that provision in cases where it had been omitted before. So that, if in the light of that decision we find them omitting that provision in the case of any officers whose election is provided for in that instrument, we are obliged to believe that the omission was *intentional,* and not accidental. And if, in addition, there are grave reasons why the Constitution should not have provided that County Commissioners should hold over until the election and qualification of their successors, the conclusion is stronger. And if, further still, a law has been passed by the General Assembly providing for just such emergencies as are liable to arise out of a fixed and limited term of office for County Commissioners, which can only be properly accepted as a legislative interpretation of the constitutional provision, the con--

clusion is irresistible that the Constitution means exactly what it says, and its plain language must not be distorted into a different meaning. *Constitution* 1867, *Art.* 7, *sec.* 1; *Act of* 1880, *ch.* 210; *Cantwell vs. Owens,* 14 *Md.,* 215.

There are grave reasons why the County Commissioners of a county should not hold over until the election and qualification of their successors. Because they appoint the places and the judges of election, and have the whole management of the political machinery of the county. If they could hold over until the election and qualification of their successors, they could perpetuate themselves in office forever by contriving to secure a fraudulent election, or refusing to appoint judges of election, and in other and various ways.

There has been a law passed by the General Assembly providing for the very emergencies liable to arise out of a fixed and limited term of office for County Commissioners, which can only be properly accepted as a legislative interpretation of the constitutional provision relating to the term of office of County Commissioner, and that Act is the *Act of* 1880, *ch.* 210.

2nd. If such were the law, that the appellants held over until the election and qualification of their successors, they are estopped, under the circumstances of this case, from setting up any such claim. The appellants, Handy, Williams, Shipley, Potee and Arnold, were returned elected County Commissioners of Anne Arundel County, as the result of the election of the 8th of November, 1881. They accepted their title to the office of County Commissioners under the aforesaid return of the election in 1881, accepted commissions as such from the Governor, and entered upon the discharge of their duties as such. Three months afterward, when they filed their answer to the petition of the appellees, contesting their election, upon the ground of fraud, they elected to stand upon the election of 1881, swore that the said election was fairly conducted, and the

returns thereof made, were true and legal returns. They never pretended to claim to hold over as Commissioners elected in 1879, but had formally and finally accepted and stood upon the election of 1881. And then, when the Court below set the election of 1881 aside, as null and void, for fraud, they seek to repudiate the title which they first stood upon and defended, and under which they had accepted commissions, and entered upon the discharge of duties; and four of the original respondents, in a capacity wherein they were not parties to the record, undertake to assert a new claim in this Court. They are not different persons who set-up this new title, but the same persons in a new capacity. This part of the case is clearly within the principle of estoppel laid down by this Court, in the case of *Jones and Anderson vs. Keating, et al.,* 55 *Md.,* 155.

3rd. The judgment of the Court below was clearly in conformity with the law in such cases made and provided, and should be affirmed.

ALVEY, J., delivered the opinion of the Court.

This case comes before us on appeal, and the only question presented here is one of jurisdiction of the Circuit Court to pass the order of the 20th of July, 1882.

The Code, Art. 35, sec. 53, provides that "All cases of contested elections of any of the officers not provided for in the Constitution, or in the preceding section, shall be decided by the Judges of the several Circuit Courts—each in his respective Circuit—and by the Superior Court of Baltimore City, in the City of Baltimore."

This section of the Code was taken from the Act of 1853, ch. 244, sec. 2, passed in reference to the provisions of the Constitution of 1851, but which has been continued in force by subsequent Constitutions, and is still in force. It is the only authority under which the Circuit Court acted in hearing the contest and passing the order appealed from. And as it is not pretended that the Constitution has made

any provision for contesting the election of County Commissioners, or that such contest is provided for in the preceding section of the Code, the question is, what is the extent of the power or jurisdiction conferred by section 53 above quoted?.

By the terms of the section the Court is invested with power of deciding cases of contested election; and this must include authority to decide all matters and questions involved in such contest.

It is alleged that the contestants were duly elected at the election held on the 8th of November, 1881, and that the returns of the polling of that election, upon which the appellants were declared elected, were false and fraudulent. These allegations are sufficiently broad and comprehensive to found the inquiry, not only as to who, of the parties claiming, were elected, but whether there had been any legal and valid election at all.

It is quite certain, if the Court had determined that the contestants were elected, that conclusion of necessity would have involved the decision of the claim of the appellants to the office, and made it necessary to declare that the returns that had been made of the polling were false, and therefore void. In the event of such decision therefore the right of the appellants to office would have been definitively determined.

It is insisted, however, that inasmuch as the Court did not declare the contestants duly elected, there was no power or jurisdiction conferred by the statute to declare that the appellants were *not* duly elected, and that the office was vacant. In other words, having passed upon the claim of the contestants and declared against their pretensions, everything else decided by the Court, in respect to the validity of the election, was in excess of the jurisdiction with which the Court was invested. But with this contention we do not agree.

It is not true, as contended by the appellants, that the case of a contested election as contemplated by the statute,

is simply a personal contention as between rival candidates in respect to their private rights to the office. Such contest, in a large sense, involves public rights and interests of an important nature, and which the Court is not at liberty to overlook. The principal object of the statute was not merely to enable individuals to assert their private rights to office, but also to furnish means by which the rights of the people might be protected against false and fraudulent returns, and the true result of an election ascertained. And where proceedings by the proper parties have been instituted, and the inquiry brought on to final termination, the Court, by virtue and force of the power to try and decide the contest, in respect to the particular office in question, is fully invested with authority and jurisdiction to declare the result of the election, whether it be to elect the one party or the other, or whether it be a failure to elect either, by reason of fraud or violence, such as would vitiate the election, and render void the certificates in favor of any particular party or candidate. This is the most beneficial construction of the statute, and that construction should be adopted which will afford the best protection of the public against false and fraudulent elections. And such has been the construction of this statute in the recent case of *Anderson vs. Levely,* 58 *Md.,* 192.

But it is insisted, that notwithstanding the Court may have had power to declare the election void, it had no power or jurisdiction, in the proceeding before it, and under the circumstances of the case, to declare the office vacant, as that depended upon the tenure derived through the preceding election of 1879.

The Constitution, Art. 7, sec. 1, simply provides that the County Commissioners shall be elected on general ticket, on the same day every second year, and does not declare in terms, that they shall hold until their successors are elected and qualified. But, without deciding whether

they would so hold or not, and without in any manner questioning or throwing doubt upon the soundness of the decision of our predecessors in the case of *Sappington vs. Scott*, 14 *Md.*, 40, we think the appellants are not in a position to invoke any such construction of the Constitution.

Four of the five appellants, were elected County Commissioners at the general election of 1879, and were in office at the time of the election of 1881. They were candidates for re-election, and were returned as elected, at the last mentioned election, and they were thereupon duly commissioned as such newly elected Commissioners. They accepted the commission, thus issued, and professed to enter upon the discharge of the duties of their office, in pursuance and by virtue of the last election and commission. These facts were distinctly charged by the contestants, and were as distinctly admitted by the appellants. They in no manner claimed that they were in office, or were entitled to hold office, by virtue of the election of 1879; but, on the contrary, they distinctly claimed that they had been duly elected at the election of 1881, and that they were rightly holding under that election. Now, under such circumstances, how is it possible that they can be heard to claim that they are entitled to hold over by virtue of the election of 1879? Their acts and professions must be allowed their full meaning and import, and by those all claim to hold by virtue of the election of 1879, is shown to have been surrendered and given up. Good faith to the public required that there should be no doubt or equivocation as to the authority by virtue of which the parties claimed to hold their office, and having assumed and professed to hold under the election of 1881, they are not at liberty to repudiate their own acts and professions, and attempt to resume a title that they had abandoned or surrendered, if, under other circumstances, such title could be maintained. Nor is it any answer to say that because

the Court, after investigation, declared the election of 1881 null and void, therefore, they were remitted to their former right to hold by virtue of their election in 1879, and that they are entitled to be regarded as having continuously held office by virtue of that election. The election of 1881 was not in effect null and void, until declared so, by the judgment of a competent tribunal; it was in all respects good and valid until declared otherwise; and the appellants were fully authorized to act in the discharge of the duties of their office, and all their official acts are as valid as if the election had been declared in all respects legal. They had not only the color of a due election, but they had all the forms necessary to invest them with full authority of the office; and these they accepted and complied with, with an intention to hold under the last election, and none other. But from the moment that the election was declared null and void, the power and authority with which they were invested, by virtue of that election, ceased, and the office then became vacant. And such being the case, it is no objection to the order of the Court that it directed notice of the vacancy to be given to the Governor, that he might fill it, under the Act of 1880, ch. 210; that was but an act of courtesy of one department of the government to another.

And having thus decided that the Court below had jurisdiction over the subject-matter before it, and that the order appealed from was not in excess of that jurisdiction, this Court has no other power of review. Being a special statutory jurisdiction, without express power of appeal, this Court is not authorized to do anything more than decide the question whether the case as tried and determined was within the limits of the special jurisdiction conferred; and as we determine that it was, the appeals must be dismissed; and we so order.

*Appeals dismissed.*

(Decided 27th October, 1882.)