THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS F. COCK and Others, Appellants, v. CHARLES E. FLEMING, CHARLES SCHROEDER and WILLIAM S. WATSON and Others, Respondents.

*Corporations — religious society incorporated under chapter* 60, *Laws of* 1813 — *what is an "omission or neglect" to choose officers within section* 3, *chapter* 158, *Laws of* 1844 — *effect of ouster of some of a vestry upon those who remain.*

A religious corporation, known as "the Rector, Church Wardens and Vestrymen of the Protestant Episcopal Church of St. Stephen, in the city of New York," was duly organized under section 1, chapter 60, Laws of 1813. The number of wardens was two, and of vestrymen eight; and these, with the rector, formed the vestry. At an election, held April 7, 1890, ten persons were declared elected wardens and vestrymen. On April 10, 1890, an action was brought, in the Court of Common Pleas, against seven of such ten persons; the other three not being parties thereto, and judgment of ouster was rendered against said seven persons.

Section 1, chapter 60, Laws of 1813, provides that church wardens and vestrymen shall hold their offices until the expiration of the year for which they shall be chosen, and until others shall be chosen in their stead. Section 3, chapter 158, Laws of 1844, provides that "whenever there shall have been any omission or neglect of any church, congregation or religious society, at their stated annual meeting, to choose any of the trustees" or other officers, such church, etc., shall not be deemed to have been dissolved, but the trustees and other officers in office, at the time of such omission, shall be deemed to be the legal officers, and shall continue to hold their offices until others be chosen in their stead.

*Held*, that the judgment of ouster in the Common Pleas related only to the seven persons made parties to the action, and did not destroy the title of the three persons, not parties to such action and judgment of ouster, to their offices.

That the removal of such seven persons did not constitute "an omission or neglect" on the part of the church to choose its officers, within the meaning of section 3, chapter 158, Laws of 1844, and hence that the incumbents, who were elected in 1889, did not hold over to the exclusion of these persons elected in 1890 against whom no judgment of ouster had been rendered.

APPEAL by the relators Thomas F. Cock, Edwin K. Linen, Edmund Luis Mooney and S. Montgomery Pike from a judgment, entered in the clerk's office of the county of New York on the 6th day of November, 1890, in favor of the defendants, dismissing this action upon the merits, with costs; and also from an order, entered in said clerk's office on the 19th day of November, 1890, denying a motion for a new trial.

Stephen R. Weeks, also a relator, died before the filing of the notice of appeal. The defendants, other than those named above, were James Blackhurst, James Maclaury, Hobart B. Jacobs and Theodore E. Smith. The complaint alleged that these, although united in interest with the relators (*i. e.*, members of the vestry elected in 1889), were in sympathy with the defendants, Fleming, Schroeder and Watson, and would not consent to become plaintiffs and relators.

*Wager Swayne*, for the appellants.

*William H. Hamilton*, for the respondents.

O'Brien, J.:

This is an action in the nature of a *quo warranto*, and was brought by the attorney-general in the name of the People, on the relation of plaintiffs, to oust the defendant Fleming from the office of warden of the Church of St. Stephen and the defendants Schroeder and Watson from the offices of vestrymen of said church. The record presents the following undisputed facts:

The rector, church wardens- and vestrymen of the Protestant Episcopal Church of St. Stephen is a religious corporation, organized under the Laws of 1813 (chap. 60, § 1). The number of wardens is fixed by its certificate of incorporation and its by-laws at two, and the number of its vestrymen at eight, and these ten persons, with the rector, form the vestry of said corporation.

Certain of the defendants claim title to their office by virtue of an election held on April 7, 1890. On such date the stated annual election of the corporation was held and the defendants, with seven other persons, were declared elected to the offices of wardens and vestrymen. On the 10th day of April, 1890, an action, in the nature of a *quo warranto*, was brought in the Court of Common Pleas against the seven persons, who, with the defendants, had been so declared elected, and in that action judgment was rendered ousting the said seven persons from office. These defendants were not parties to that action, but thereafter this action was brought for the purpose stated.

The plaintiffs admit that, at the stated annual election, held on April 7, 1890, the defendants received a certificate of their election, but contend that they have never become the legal officers of the

corporation, or entitled to act as such, because of an omission or neglect at said election to elect one other warden and six other vestrymen; that by such omission or neglect the church wardens and vestrymen in office at the time of such omission held over and are to be deemed the legal officers of such church and continue to hold their offices until others are chosen in their stead. This con- tention is based upon the Laws of 1813 (chap. 60, § 1), which pro- vides "that church wardens and vestrymen to be chosen at any of the said elections, shall hold their offices until the expiration of the year for which they shall be chosen and until others shall be chosen in their stead." And Laws of 1844 (chap. 158, § 3), which provides : "Whenever there shall have been any omission or neglect of any church, congregation or religious society, at their stated annual meeting, to choose any of the trustees, church wardens, vestrymen or other officers, such church, congregation or religious society, shall not be deemed or taken to have been thereby dissolved, but the trustees, church wardens, vestrymen or other officers in office, at the time of such omission, shall be deemed and taken to be the legal officers of such church, congregation or society, and shall continue to hold their offices until others be chosen in their stead."

It having been adjudged that seven of the persons declared elected on the 7th day of April, 1890, were not legally elected, the claim is that the former wardens and vestrymen hold over by force of these statutes. It is conceded that the defendants here were legally chosen at the election of 1890, but it is asserted that they were not elected in the stead of the ten persons formerly in office so as to terminate the rights of the former incumbents, "to hold their offices until others be chosen in their stead," under the provisions of the act cited.

At the outset a serious question is presented as to the right of the relators to question the title of the respondents. They participated without objection in the election of 1890. They were candidates at such election and voted thereat. They actively participated with the rector in rejecting nine votes that were offered against them and for their competitors, four of whom were subsequently declared to have been elected. With knowledge of the facts the relators accepted the certificates of their election, accepted the offices under such certificates, went into possession, and, until ousted by the judg-

ment of a court of competent jurisdiction, assumed to discharge all of their duties and functions.

In the suit brought against them they persisted in claiming title under this very election, and still persist by an appeal taken from the judgment of ouster. Upon a state of facts in many respects similar to these now presented the Maryland Court of Appeals in the case of *Handy* v. *Hopkins* (59 Md., 157), held that the appellants who had claimed title under the election held in 1881, which was declared null and void, were not in a position thereafter to assert that they claimed title by virtue of a hold over.

This case is instructive not only upon this question, but as bearing upon the effect of the judgment of the Court of Common Pleas in ousting the seven officers of St. Stephen's who were elected, together with the defendants, at the election in 1890. It is an argument in favor of respondents' position, that the effect of selecting officers at an election subsequently declared to be null and void, and who were thereby removed, created "vacancies" in such offices. In the course of the opinion we find this language :

"The election of 1881 was not in effect null and void, until declared so by the judgment of a competent tribunal. It was, in all respects, good and valid until declared otherwise; and the appellants were fully authorized to act in the discharge of the duties of their office, and all their official acts are as valid as if the election had been declared in all respects legal.

"They had not only the color of a due election, but they had all the forms necessary to invest them with full authority of the offices, and these they accepted and complied with, with an intention to hold under the last election, and none other. But from the moment that the election was declared null and void, the power and authority with which they were invested by virtue of that election ceased and the office then became vacant."

We shall assume, however, without deciding the question, that the appellants are not estopped from denying the title of the respondents; and will, therefore, pass to a consideration of the real question in the case as to whether or not successors to the relators and the other members of the old board were elected the 7th day of April, 1890. It is conceded that the full board of officers required

to be elected were voted for on the 7th day of April, 1890; that they were declared elected by the proper officers; that they all accepted and went into office under that election; that certificates of their election were made out and entered in a book of the minutes of the vestry, and that they continued to occupy the offices from April 7th until June 21, 1890. Notwithstanding these facts, the claim is advanced that the effect of the judgment of ouster of the seven other officers destroyed the title to the offices held by the three defendants here, who were legally elected and whose status is in no other way questioned. In other words, it is insisted that the removal of the seven constitutes an "omission or neglect" of the church to choose its officers, and, therefore, under the laws of 1844, above quoted, the former incumbents held over to the exclusion of the defendants. This contention is sought to be strengthened by the argument that if the three defendants were elected in the stead of the former vestry, they are not competent to transact the business of the corporation for the reason that they are not numerically sufficient to constitute a board for the transaction of business, nor are they, for the same reason, in a position, if the judgment of ouster of the seven others be construed as creating vacancies in those offices, competent or empowered to fill the same. (Laws of 1813, chap. 60, § 1.)

The law of 1844 employs the language that "whenever there shall have been any omission or neglect   *   *   *   to choose any of the trustees   *   *   *   the trustees, etc.,   *   *   *   shall continue to hold their offices until others be chosen in their stead."

In *People* v. *Van Horne* (18 Wend., 514), in construing a similar statute, the court defines the term "neglect" as used by the legislature as synonymous with "omit" or to leave an act undone. Here there was no omission or neglect to hold an election or choose officers. The stated annual election was held, a full board was declared elected, and this board continued in office for two months and a half, when seven of its members were ousted or removed, leaving the defendants in office.

In our view, the law of 1844 (chap. 158) can have no application to a state of facts such as is here presented. It provides for a case where there is an omission or neglect to hold an election or choose officers, and cannot be construed as meaning that upon a vacancy

being created or the title being destroyed of any officers by judgment or otherwise, that then the titles of all the others to their respective offices shall *ipso facto* also be destroyed. This view is supported by the provisions of the law of 1813, which prescribes that "Whenever any vacancies shall happen" * * * by death or otherwise, the said trustees shall appoint a time for holding an election to supply such vacancy." It is further strengthened by recalling what the statute was intended to prevent, viz., the dissolution of the corporation by an omission to elect officers. No dissolution would result by an omission to elect all, as distinguished from some of the officers. It may be true, as claimed, that by the subsequent provision of the section just quoted, the remaining officers or trustees, not being sufficient in number to constitute a quorum, cannot fill the vacancies thus created.

In our judgment, however, a distinction exists between the right of persons to hold office and their power to do certain acts which, by statute or the by-laws of a corporation, can only be done by a board or a quorum thereof. The courts have in several instances set aside the election of a majority of directors and trustees of corporations, leaving only a minority in office and directed the vacancies to be filled by an election. In *Ex parte Desdoity* (1 Wend., 98) the election of thirteen trustees was set aside and that of the remaining four declared valid. In *Vandenburgh v. The Broadway Railway Company* (29 Hun, 348) it was held that any number of persons, who might receive a majority of the lawful votes, were elected, although there was a failure to elect the full number required by law.

In the *Matter of the Union Insurance Company* (22 Wend., 591), twenty-two, instead of twenty-three, directors were elected. The old board thought the election, for that reason, had wholly failed, and claimed the right to hold over and order a new election. This election was held and twenty-three were chosen. On motion, the election of the twenty-three was set aside and the election of the twenty-two declared valid, and an election for one to fill the vacancy was ordered. In this latter case, it is true, which gives some strength to the appellants' argument, is a dictum to the effect that "if less than twelve, the major part of twenty-three, had received a plurality of votes, it may be that the whole election would have been void."

It will be noticed that this dictum does not go to the extent of saying that the election would have been void, and yet this is the only authority referred to in which any such intimation is given. On the other hand, in addition to the authorities cited, we find in the *Matter of Long Island Railroad Company* (19 Wend.. 37) a dictum directly contrary. But it is unnecessary to examine all the arguments advanced to support appellants' contention, for, after all, the question is reduced to a narrow compass and relates entirely to the construction to be given to the words "neglect" and "omission," as used in the Laws of 1844.

In our judgment, successors to the relators and the other members of the old board were selected in April, 1890, and no omission or neglect to choose officers occurred, such as would entitle the old officers to "hold over." The new officers were fully authorized to act and discharge their duties, as they did for a period of two months or more. The result of the judgment of ouster of the seven others elected with them was to create vacancies, and cannot be held to have destroyed the title to the offices to which the respondents were duly elected. This conclusion, consonant with law, seems to us to be founded upon reason and justice. To uphold the relator's position would be, in effect, to determine that these defendants, who were regularly chosen at an election held at a time and place fixed by the statute, articles of incorporation, by laws and invariable usage of the church, the notice for which was given under the direction of the court, and at which election all the votes cast, including the relators, were for the defendants, and whose title to office was thereafter recognized, should be ousted and excluded from office because a judgment subsequently rendered removed the relators themselves.

In our opinion the disposition made of this case by the trial court was proper, and the judgment and order should be affirmed, with costs and disbursements.

Vᴀɴ Bʀᴜɴᴛ, P. J., and Dᴀɴɪᴇʟs, J., concurred.

Judgment and order affirmed, with costs and disbursements.