Laebemore, Ch. J., and Bookstaver, J., (orally) reversed the judgment with costs on ground stated in headnote.
II. Action to enjoin consolidation.
N. Y. Court of Appeals;
June, 1890.
1. Religious corporations; consolidation.] In proceedings for the consolidation of two church corporations under L. 1876, c. 110, as amended by L. 1880, c. 167,* it is essential, in the case of Protest *232 ant Episcopal churches, to secure the approval of the bishop and the standing committee of the diocese, and then the approval of the supreme court". In both cases the parties can be heard as to any, ground bearing against the proposed consolidation, and the supreme court may demand that proper notice may be given to all parties, who shall have a full hearing.
2. The same.] An equitable action will therefore not lie and an injunction will not issue to restrain such proceedings for consolidation on grounds of irregularity in the action of the corporations agreeing to consolidation, and allegations of the inadvisability of the consolidation, but the parties will be required to present those objections in the statutory proceeding.
Appeal from order of the general term of the court of common pleas for the city and county of Hew York, affirming an order of the special term continuing an injunction pending the action.
The action was brought by James Maclaury, as trustee, etc., of the Protestant Episcopal Church of St. Stephen, *233 ¿against A. Bloomer Hart and others, as defendants, among whom were said church corporation and also the corporation •of the church of the Holy Trinity of Harlem.
The complaint alleged that plaintiff brought the suit as •a trustee, and in behalf of the rector, church-wardens and vestrymen of the church of St. Stephen, a religious corporation, organized under chapter 60 of the Laws of 1813 and the acts amendatory thereof. That the natural persons named -as defendants, with the plaintiff, had for some time formed the vestry, and were under the law the trustees of said -church, and that the defendant, Hart, was the rector thereof. That the defendant, the church of the Holy Trinity, was a •corporation organized under the same act. That said church of St. Stephen owned certain valuable real property, which was specifically described. That the Holy Trinity church has a place of worship distant four miles from that of the church of St. Stephen, recently built and heavily encumbered. That proceedings of an irregular nature had been taken by certain of the defendants at a special meeting of the vestry of the church of St. Stephen looking to the consolidation of the said two churches, the nature of the business to be transacted at such special meeting having been concealed from plaintiff and others, who consequently omitted to take any measures to prevent the adoption of the scheme. That in •consequence of such concealment, a resolution favoring such •consolidation was passed without proper consideration or discussion.
The complaint then alleged facts tending to show the irregularity of the proceedings and the personal interest of •certain of the individual defendants in securing their con,summation, and that further proceedings toward consolidation had been taken by such defendants under the resolution, and were still proceeding, against the protest of plaintiff and a large majority of the church and congregation. There were further allegations showing reasons why such consolidation should not be made, and of conspiracy on the part of She defendants to secure it.
*234 Judgment was prayed that thé resolution passed at the-special meeting of the vestry be adjudged illegal and set aside, together with the proposed agreement and every contract made by virtue of such resolution, and for an injunction against any act furthering, effecting or consummating the consolidation, or any transfer of the church property.
The plaintiff upon this complaint and the affidavits of’ himself and others obtained an injunction order with a provision requiring defendants to show cause why it should not be continued. After a hearing, at which opposing affidavits-were presented, the court continued the injunction in the following form:
Ordebed : “ That the defendants and each of them, their agents, attorneys and servants refrain from being or causing or suffering to be done, any act or acts of any character or description, for the making, furthering, effecting or consummating any union and consolidation of the said church of St. Stephen with the said Holy Trinity church, or any sale- and transfer of the real estate and property of the said church of St. Stephen to the said Holy Trinity church, under the-resolution of February 6, 1890, or any proposed consolidated church, or any sale or transfer of the church edifice of the-said church of St. Stephen or any agreement or pretended agreement, for any such union and consolidation, or sale and transfer, under the resolutions of February 6,1890, until the final judgment and decree in this action.”
The following opinion was rendered:
Allen, J.
It is a principle of equity jurisprudence that-one of several trustees may invoke the aid of a court of equity to set aside an agreement illegally entered into by his-co-trustees and to restrain the carrying it into effect, as well as to restrain the doing by them of any threatened illegal act.
The resolution for consolidation of the churches of St. Stephen’s and Holy Trinity church, of Harlem, to set aside-which and to prevent its being carried into effect this action) *235 is brought, was passed at a special meeting of the vestry of the church of St. Stephen. The notice calling such meeting did not state the object thereof. At least two of the-trustees were not present. This renders the action taken at the special meeting invalid and illegal. The rule that a notice calling a special or extraordinary meeting must state-" particularly the objects of the meeting, is amply supported by the authorities (Angell and Ames on Corp. § 489; Boone on Corp. § 64; Morawetz on Corp. § 482; Waterman on Corp. Vol. 1, pages 207 and 209, and the cases cited in these-text books). The plaintiff is thus entitled to the relief lie-asks for unless something can be found in the Act of 1876, chapter 176, as amended by the act of 1880, chapter 167,. which debars him from the right of the interposition of a court of equity which he possessed before the passage of' that act. It is contended by the defendant’s counsel that the provision of the act referred to requiring an approval of the-consolidation agreement by the supreme court upon an application being made therefor and providing that upon such application “ all persons interested may be heard,” does so 1 debar him.
This statute does not give to the parties interested any new right not before known to the common law or equity and provide a means for enforcing such new right. The equitable right to set aside invalid transactions and to come-into a court of equity for that purpose under the rules and principles laid down by such courts is of very old date. The jurisdiction of courts of equity in this respect cannot under-the constitution of this State be divested by the legislature. The clause in this statute may give -a cumulative remedy ; but the plaintiff is not bound to wait until those whom he opposes see fit, by making an application, to give him an opportunity of availing himself of that cumulative remedy.
The statute gives the plaintiff no right to initiate any proceedings under it, nor does it prescribe any mode for bringing parties in opposition before the court, nor is there • any provision compeding the applicants to disclose to the- *236 court the fact that there is opposition or that persons other than themselves are interested. A statute of this character does not afford ample, nor even sufficient remedy to the plaintiff, and he should not be debarred of his equitable right and remitted to defending a proceeding which the defendants may, or may not initiate, and of which they may, or may not, give him notice. There is sufficient in the history -of the case to warrant a belief that the plaintiff’s rights may be seriously impaired by such remission.
Upon the views above expressed the motion must be granted, without entering into the question of the good faith of the parties seeking the consolidation,—about which voluminous affidavits have been submitted,—and the injunction restraining the defendants from any act or proceeding for the consolidation of the said churches under the resolution passed at a special meeting of the vestry of St. Stephen’s ■ church, February 6, 1890, continued until the final judgment and decree in this action.
The Cowrt at General Term, upon appeal (Larremore, ■•Ch. J., and Bookstaver, J.), affirmed the order on the opinion below.
From such order of affirmance, this appeal was taken.
Charles Blandy (Andrew J. Shipman, attorney) for appellants. I. Jurisdiction of proceedings for the consolidation of religious corporations is vested exclusively in the supreme court, and it is provided that in such proceedings “ all parties interested therein may be heard ” (Heiser v. Mayor, etc., 104 N. Y. 68, 72; Dudley v. Mayhew, 3 Id. 9, 15; Jessup v. Carnegie, 89 Id. 441; Brown’s Appeal, 66 Penna. 157; Janney v. Buell, 55 Ala. 408; Coleman v. Freeman, 3 Ga. 137; People v. Wasson, 64 N. Y. 167; Wallack v. Society for Reformation, etc., 67 Id. 23; Savage v. Allen, 54 Id. 458; Mandeville v. Reynolds, 68 Id. 528). 'The remedy of the plaintiff in the supreme court is adequate. 'The plaintiff seeks to restrain the supreme court (Schell v. Erie Ry. Co., 51 Barb. 369; Grant v. Quick, 5 Sandf. S. *237 C. 612; Savage v. Allen, 59 Barb. 291; Wenfield v. Bacon, 24 Id. 154; Erie Ry. Co. v. Ramsey, 45 N. Y. 647).
II. The call for the meeting of the 6th of February was- ■ sufficient (Granger v. Original Empire Co., 59 Cal. 678). The complaint does not allege that the call for the meeting was-not sufficient. The call for the meeting must be presumed to have been sufficient (Porter v. Robinson, 30 Hun, 209; Sargent v. Webster, 13 Metc. 497). The notice being in writing, it cannot be proven by parol (Stevens v. Eden Meeting-House Society, 12 Vt. 688).
III. The absence of certain defendants from the meeting-of February 6, does not affect the validity of the resolutions for consolidation (Porter v. Robinson, 30 Hun, 210).
IY. The plaintiff cannot avail himself of the alleged failure to give sufficient notice to certain defendants of the-meeting of February 6 (Schenectady, etc. Plankroad Co. v. Thatcher, 11 N. Y. 102; People v. Peck, 11 Wend. 604; Matter of M. & H. R. R. Co., 19 Wend. 135; Samuel Holliday, 1 Woolw. 400; Zabriskie v. Cleveland, etc. R. R. Co., 23 How. U. S. 381; Jones v. Milton, etc. Turnpike Co., 7 Ind. 547).
Y. The delegation of power to the committee to execute the agreement for consolidation was valid, and the committee did not exceed its powers (Hoyt v. Thompson’s Executor, 19 N. Y. 207; Olcott v. Tioga R. R. Co., 27 Id. 546; Burrill v. Nahant Bk., 2 Metc. 163).
Daniel G. Rollins (David Bennett King, and Booraem, Hamilton & Beckett, attorneys) for respondent. I. The order appealed from is not reviewable by this court (Paul v. Munger, 47 N. Y. 469; Calkin v. Manhattan Oil Co., 65 Id. 557; Hatch v. Western Union Tel. Co., 93 Id. 640; McHenry v. Jewett, 90 Id. 58; Selchow v. Baker, 93 Id. 59; Anderson v. Anderson, 112 Id. 104; Allen v. Meyer, 73 Id. 1 Haebler v. Bernharth, 115 Id. 459).
II. The action is properly brought by the plaintiff as trustee, etc., and in order to maintain the action he need not *238 ,-sliow that he has demanded that the corporation bring the ■suit and that it has refused to do so (Brinckerhoff v. Bostwick, 88 N. Y. 55, 59; Butts v. Wood, 37 Id. 317; Robinson v. Smith, 3 Paige, 222; Hodges v. New England Screw Co., 1 R. 1. 312; Heath v. Erie Ry. Co., 8 Blatchf. 347; Currier v. N. Y. S. & B. R. R. Co., 35 Hun, 355; Anderton v. Wolff, 41 Id. 471; Sheridan v. Sheridan Electric Light Co., 38 Id. 396; Kelsey v. Sargeant, 40 Id. 450; Brewster v. Hatch, 4 N. Y. State Rep. 617; Young v. Drake, 8 Hun, 61; Robinson v. Smith, 3 Paige, 222, 233; Stokes v. Phelps Mission, 47 Hun, 570; First Ref'd Presby. Ch. v. Bowden, 14 Abb. N. C. 356).
III. A court of equity has power to restrain the proceedings of the trustees of a religious corporation, and amend their acts (Wyatt v. Benson, 23 Barb. 327; Matter of St. Ann’s Church, 23 How. 286; Stokes v. Phelps Mission, 47 Hun, 570; Robertson v. Bullions, 11 N. Y. 243; Gram v. The Prussia, etc. German Soc., 36 Id. 161).
IV. The resolutions claimed to have been passed at the special meeting of the vestry of the church of St. Stephen, held on February 6, 1890, were and are illegal and invalid (Porter v. Robinson, 36 Hun, 209; Atlantic Delaine Co. v. Mason, 5 R. 1. 463; Ehrenfeldt’s Appeal, 101 Penn. St. 186; Matter of Bridgeport Brewery Co., 1 L. R. 2 Ch. 191; People’s Mut. Ins. Co. v. Westcott, 14 Gray, 440; Gray v. Society, etc., 137 Mass. 329; American Tube Works v. Boston Machine Co., 137 Mass. 5; Downs v. Bowdoin Sq. Bapt. Ch., 21 N. E. Rep. 294; Kortright v. Commercial Bk. of Buffalo, 20 Wend. 91; 22 Id. 348).
V. Conspiracy was clearly shown (Kelly v. People, 55 N. Y. 576; People v. Mattur, 4 Wend. 229, 261).
VI. Certain of the defendants were clearly disqualified from voting for the resolutions for consolidation (Davone v. Fanning, 2 Johns. Ch. 252; Jewett v. Miller, 10 N. Y. 405; Butts v. Woods, 37 Id. 317; Ogden v. Murray, 39 Id. 202; Munson v. S. G. & C. R. R. Co., 103 Id. 58; Wardell v. R. R. Co., 103 R. S. 651).
*239 VII. The rector, wardens and vestrymen of the church of St. Stephen, are, under the law, trustees of the corporation, and 'tneir acts as trustees are subject to the same rules as are the acts of trustees of other corporations, and they can do more use their position as such trustees to promote, their own interests than can the directors of a bank or of a railroad ■company use their positions for a transaction with their corporation for their own benefit (Robertson v. Bullions, 11 N. Y. 243; Wardens, etc. of St. James Church v. Rector, etc. of Church of Redeemer, 45 Barb. 356; Stokes v. Phelps Mission, 47 Hun, 570; M. E. Soc. v. Perry, 51 Id. 104).
VIII. The improper and unlawful suppression, concealment and misrepresentations of the objects of the meeting, ■show that certain defendants were influenced by improper motives, besides being disqualified by reason of interest from voting for the scheme of consolidation (Armstrong v. Edwards, 95 Ind. 422; People v. A. & S. R. Co., 55 Barb. 344; People v. Peck, 11 Wend. 604).
IX. The vestry of the church of St. Stephen had no right to undertake a consolidation, which would destroy the church, remove its place of worship, and transfer its property to another church several miles away, against the wishes of members of the church and congregation which constituted the corporation (Robertson v. Bullions, 11 N. Y. 243; Gram v. The Prussia, etc. Soc., 36 Id. 161; People v. Hulbert, 46 Id. 110; Walker v. Wilcox, 66 Id. 655; People’s Bk. v. Anthony’s R. C. Ch., 109 Id. 512; In re St. George’s M. E. Church, 21 Weekly Dig. 81).
X. The relief sought here cannot be obtained in the proceeding pending in the supreme court (Savage v. Allen, 54 N. Y. 458; People v. Wasson, 64 Id. 167; McDowell’s Appeal, 123 Pa. 381; Dinsport v. Ranson, 29 W. V. 487; People v. Cromwell, 102 N. Y. 476; People v. Fairman, 91 Id. 385; People v. Richards, 99 Id. 620).
XI. No proceeding for a consolidation of the church of St. Stephen with Holy Trinity church is now pending before .the supreme or any other court. A threatened proceeding *240 of that kind cannot be pleaded as a bar to this action (Stokes v. Phelps Mission, 47 Hun, 570; Hopkins v. Seymour, N. Y. Daily Reg., May 16, 1884; First R. P. Ch. v. Bowden, 14 Abb. N. C. 357; s. c., 10 Abb. N. C. 1; Isham v. Trustee, etc., 63 How. 465; Johan v. Fullagar, 14 Abb. N. C. 363; Little v. Jayne, 124 Ill. 123; M. E. Soc. v. Perry, 51 Hun, 104).
XII. Directors of corporations may be restrained from doing acts which ordinarily would be within the scope of their authority and power, when in view of the special circumstances the performance of such acts would be in bad faith or an injury to the interests of the stockholders (Wright v. Woodville, M. Co., 40 Cal. 20, 27; Dodge v. Woolsey, 18 How. U. S. 340).
XIII. Preliminary injunctions which only prevent the-defendant from doing an act which would render the final judgment ineffectual may be granted with some readiness(Bronk v. Riley, 50 Hun, 489; Atlantic, etc. Tel. Co. v. Baltimore, etc., 46 Sup. Ct. 421; Haskell v. Hamilton University, 8 Barb. 174).
Finch, J.
We reverse the order appealed from upon the ground that the facts stated in the complaint do not justify an award of the equitable relief demanded. We do not review the discretion which grants an injunction temporarily restraining a defendant until final judgment, unless we are entirely satisfied that the plaintiff is not entitled to ultimate relief. The present action seeks to-withdraw from the tribunals specially clothed with authority to determine the controversy the right to decide it, and has no adequate foundation except distrust of those tribunals. Two religious corporations cannot consolidate unless, in the-case of Episcopal churches, their agreement so to do is approved by the bishop and the standing committee of the diocese, and then by the supreme court to whicli is given the fullest and most complete discretion as to all the terms- and details of the arrangement. Before the bishop and the: *241 standing committee this plaintiff can be heard, as to every ground of complaint which he has alleged, and as to all the reasons which bear against the consolidation proposed. It is not to be assumed that the bishop will refuse to hear any member of his flock coming with a proper and respectful protest, or will decide in any other way than upon a full view of the situation and with an honest and deliberate purpose to do what it best for both churches. To him, as the ecclesiastical head of the diocese and the standing committee as his adviser and associate in the judgment, it was entirely proper that the proposed agreement of consolidation should be submitted.
But beyond that the statute requires the assent of the supreme court, which may demand that all parties appear before it, and will be' quite sure to see that suitable notice is given, and that no interested party is deprived óf a hearing. That the statute merely designates the ultimatetribunial and prescribes its authority without specifying the practice to be pursued, does not justify an inference that it will proceed in a partial or unjust manner or contrary to-its normal rules of action. There is no reason, therefore,, why the statute remedy should not be pursued and a court of' equity is never at liberty to draw to its general jurisdiction a question remitted to a competent and sufficient authority by express command of a statute, unless under some very exceptional circumstances, which do not existhere (People v. Wasson, 64 N. Y. 167; Heiser v. Mayor, etc., 104 Id. 68). The statute (laws of 1876, chap. 176) not only provides that all parties shall be heard but makes the agreement of consolidation the necessary preliminary to the action of the ecclesiastical authority and that of the supreme court.
When the common pleas enjoined any action under that agreement they simply obstructed the statutory remedy and stripped the bishop and the supreme court of jurisdiction in the specific proceeding, and drew to themselves an authority which the law had lodged elsewhere.
The agreement, whether made lawfully or unlawfully, *242 honestly or dishonestly, could harm nobody because it bound nobody, and served only like a petition or a pleading tp bring the question into court and place it before the appointed tribunal for adjudication. Equity wields the' powerful process of injunction to prevent irreparable injury and is somewhat choice of the weapon. In the agreement made, whatever its character or occasion, there was no danger or harm to the plaintiff or his rights. Before the bishop, before the standing committee, before the supreme court, it would stand merely as a proposal, open to every kind of criticism, exposed to full inquiry, and utterly ineffectual for any purpose except to raise the question. To enjoin any proceeding under such an agreement simply forbids the statutory remedy and draws the whole inquiry and the ultimate determination of the controversy away from the appointed tribunal. The injunction averts no danger to the plaintiff unless it be the danger of a hearing and decision before the statutory tribunal, and its sole office is to effect that result. It must therefore be dissolved.
Order of general and special term reversed, with costs in both courts.
All the judges concurred, except Andrews and O’Brien, JJ., absent.
III. Mandamus to compel treasurer to affix seal to CONSOLIDATION AGREEMENT.
N. Y. Supreme Court, First District, Special Term
April, 1890.
Again, August, 1890.
Mandamus.] A mandamus will not issue to compel the treasurer of a religious corporation to affix the corporate seal to an agreement for consolidation with another corporation, where it is claimed that proper notice was not given of the special meeting of the vestry at which such contract was authorized, and an injunction has been *243 granted on that ground in an action in another court, restraining any further steps to effect the consolidation.
'2 The same.] The writ of mandamus does not issue as a matter of right, but only in the discretion of the court, and it is never granted except to enforce a clear, legal right.
•S. The same.] It seems that the rector of the church has no such interest in the fconsolidation as will enable him to prosecute as relator, proceedings to compel the treasurer to affix the corporate seal to the agreement for consolidation, where he has never been authorized by a legally constituted board of vestrymen to do so.
4. The same.] Where the duty of the treasurer to affix the seal depends upon disputed questions of fact, tending to show the validity or invalidity of the resolution authorizing the consolidation, the court will not determine such disputed questions upon affidavits, but the peremptory writ will be refused.
‘■5. The same.] The fact that there is a serious controversy between members of the church as to the wisdom or desirability of the proposed consolidation, and it is impossible for the court to determine from the papers what proportion of the members are in favor of it— furnishes an additional ground for refusing the writ, and leaving the parties to elect a new board of vestrymen, who will take the proper measures to effect the consolidation, if a majority desire it.
Application for madamus.
' Before the decision of the court of appeals above stated, application was made on the relation of the rector, churchwardens and vestrymen of the protestant episcopal church of St. Stephen, against James Blaekhurst, as treasurer of said corporation, for a peremptory writ of madamus to compel the respondent to affix the corporate seal of the relator to an agreement for consolidation, or to allow the same to be affixed thereto, by the clerk of the relator, etc.
The moving affidavits set forth the proceedings for consolidation referred to in the last reported action, that respondent had the custody of the relator’s corporate seal; that the consolidation agreement authorized by the resolution had been duly signed by the rector and clerk, and nothing was lacking'to give it full force and effect except the corporate seal; that respondent had been applied to for said seal, or th'e' *244 use thereof, but had refused to deliver the same. The proceedings in the replevin suit were also set forth. It was-further alleged that the proceedings for consolidation were hindered by respondent’s refusal; that relator has no power to compel said seal to be actually and materially affixed by respondent, and therefore has no means of consummating^, completing and ratifying the acts it directed, nor of preparing and presenting to the court a petition according to law for the consolidation of the two churches.
The opposing affidavits denied the regularity and legality of the proceedings for consolidation and traversed many of the allegations of the moving papers. They alleged that respondent had the custody of the seal as treasurer by virtue of the by-laws of the corporation, and that no resolution of the-vestry had been passed authorizing or directing him to affix it to the document in question.
The proceedings in the court of common pleas and the< injunction order were also set forth.
Andrew J. Shipman, for relator
Booraem, Hamilton & Beckett, for respondent.
Andrews, J.
As the court of common pleas has decided that proper notice of the meeting held on February 6-was not given, and that the resolution adopted at that meeting was therefore invalid, and has granted an injunction-pending the litigation, restraining the defendant Blackhurst and others from taking any further steps to effect a consolidation of the two churches, the application for a mandamus must be denied with $10 costs.*
After the reversal by the court of appeals of the injunction order of the court of common pleas (See proceeding II.,, ante) an application was, in July, 1890, made on the relation of A. Bloomer Hart, rector of the church of St. Stephen, *245 ■against James Blackhurst, as treasurer, to compel him to affix the corporate seal to the agreement for consolidation, or to allow the same to be affixed by the clerk of the corporation, ■and to deliver to the relator a statement of the moneys of the corporation, its property, etc. The moving papers were substantially similar to those used on the prior application for a mandamus.
Andrew J. Shipman, for relator.
Booraem, Hamilton & Beckett (David Bennett King, of counsel) for respondent. I. When the facts are in dispute a peremptory mandamus cannot be granted (People v. Board of Supervisors, 64 N. Y. 600; People v. Wendell, 71 Id. 171).
II. The court must consider only such facts alleged in the petition as are not denied, or put in issue, and the affirmative allegations presented on the part of the respondent in opposition to the application for the writ (People v. R. W. & O. R. R. Co., 103 N. Y. 95, 105; People v. Cromwell, 102 Id. 481; People v. Board of Supervisors, 73 Id. 173; People v. Fairman, 91 Id. 385; People v. German American, etc., 99 Id. 621).
III. Affidavits by the relator in answer to the denials ■and allegations contained in the respondent’s affidavits cannot be considered (People ex rel. Del. Mar. v. St. L. & S. F. R. R. Co., 47 Hun, 543).
IV. The truth or falsity of the respondent’s affidavits ■cannot be inquired into, or disputed in deciding the question raised here. They must be taken to be true (People v. Bd. of Supervisors, 5 Weekly Dig. 533; People v. Richards, 99 N. Y. 481; People v. Cromwell, 102 Id. 481).
V. The respondent had a right to consider whether the pretended meeting and resolutions and agreement were lawful and valid, and if they were as he claims unlawful and invalid, it was his duty to disregard them and to refuse to be *246 bound by them (People v. Supervisors, 64 N. Y. 600; People v. Newton, 112 Id. 399).
VI. The duty for the enforcement of which a mandamus will .be granted, must be a legal duty, clear and free from doubt (People v. Newton, 112 N. Y. 399).
VII. The successors of the wardens and vestrymen were-elected April 7, 1890 (People v. Jones, 17 Wend. 81; Handy v. Hopkins, 59 Md. 157; People v. Phillips, 1 Denio, 388; People v. Thatcher, 55 N. Y. 536; Matter of Pioneer Paper Co., 36 How. 102; Exp. Holmes, 5 Cow. 426; Matter of Union Ins. Co., 22 Wend. 591; Exp. John B. Desdoity, 1 Wend. 37; Matter of Long Island R. R. Co.,. 19 Id. 37; People v. Bartlett, 6 Id. 422; Van Amburgh v. Baker, 81 N. Y. 46; P. & R. C. & I. Co. v. Hotchkiss, 82 Id. 471; Hyde v. State, 56 Miss. 665).
VIII. The pretended resolutions and agreement are both illegal and invalid (Ogden v. Murray, 39 N. Y. 202; Butts v. Woods, 37 Id. 317; Jewett v. Miller, 10 Id. 403; Davone v. Fanning, 2 Johnson Ch. 252; Munson v. S. G. C. R. R. Co., 103 N. Y. 58).
IX. The relator does not have a clear legal or equitable, right to have the respondent affix the seal to the proposed agreement (People v. Newton, 112 N. Y. 396; Northorst v. N. Y. C. R. R. Co., 66 Id. 609; People v. Wendell, 71 Id. 171; People v. Canal Appraisers, 73 Id. 443).
X. This court will not aid the relator to thwart and nullify the injunction order of the court of common pleas (Matter of Sage, 70 N. Y. 220; People v. Wendell, 71 Id. 171 Matter of Dederick, 77 Id. 595; People v. Campbell, 72 Id. 496).
Andrews, J.
I am of the opinion that the application! for a peremptory writ of mandamus, requiring the respondent to affix the seal of the church to the proposed agreement, should be denied for the following reasons :
First. The writ of mandamus does not issue as a matter of right, but only in the discretion of the court, and it is; never granted except to enforce a clear legal right-
*247 Second. It is very doubtful whether the relator has such an interest in the matter in controversy as entitles him to maintain this proceeding, inasmuch as it is not a proceeding to enforce an alleged duty, in which the general public is concerned, but to promote certain alleged private rights. The whole subject of taking such steps as might be necessary to bring about a consolidation of the two churches was not referred by the vestry to the relater, but to a committee of three. There has been an election, at which ten vestrymen Were elected and took office. Subsequently, in a quo war? Tanto proceeding, seven of such vestrymen were ousted from their offices. It is certainly very doubtful whether the members of the old board, which was succeeded by a new board, are now in office. If they are not, then there are but three vestrymen in office, and those three could not authorize the relator to commence and maintain this proceeding.*
It is not shown that, as rector, the relator has any authority to maintain a proceeding of this kind, and it does not *248 appear that he has ever been authorized, either by the old board of vestrymen, or by the new board, to institute the same. Certainly a stranger to the church could not maintain the proceeding, and, in my opinion, it is exceedingly doubtful whether the rfelator can do. so.
Third. Assuming, however, that the relator, either by virtue of his position as rector, or under authority received from the old board of vestrymen, or the new board, represents the church corporation and the vestrymen, he has not a clear legal right to have the seal affixed to the proposed agreement.
The question whether such right does or does not exist depends partly upon the decision of certain questions of law, and partly upon the decision of certain questions of fact. The questions of law are not altogether free from difficulty, but that circumstance presents no reason why the court should not pass upon it. With regard to the questions of fact, the situation is entirely different. In deciding whether or not a writ of mandamus shall issue, the court never undertakes to determine disputed questions of fact upon affidavits. This has been decided so many times that it is now elementary law.
The whole foundation of the relator’s claim rests upon the original resolution adopted by the old board of vestrymen, and it is claimed by the respondent that the resolution is absolutely void, because no notice of the object of the meeting at which it was adopted was given. The relator alleges in his papers that such meeting was “ duly ” held, and the respondent sets up a variety of facts which tend to show that it was not “ duly ” held. Before this question can be decided evidence must be taken to ascertain what the facts were, because the question of law involved cannot be decided until it is shown whether or not it was necessary to give any notice of the object of the meeting, and, if so, what notice, if any, was given.
If the original resolution was not legally adopted the respondent was under no duty to affix the seal to the agree *249 raent, and neither the rector nor the vestrymen, nor the •church, could compel him to do so; and the respondent has the right to have this question determined in the regular ;and ordinary way—the questions of law by the court, and the questions of fact by the jury.
Many other important allegations contained in the moving papers are denied in the answering affidavits, and, as •above stated, the circumstance that there is a serious dispute :as to material and important facts is fatal to this application.
Fourth. Even if the questions of law were less doubtful •and the dispute as to the facts were not so serious, I should be disinclined to issue a peremptory writ of mandamus requiring the respondent to affix the seal to the proposed •agreement, at the present time. There is a serious controversy between members of the church as to the wisdom or •desirability of the proposed consolidation So many charges •and countercharges have been made, and the matter has become so complicated, that it is impossible to determine from the paper.! before me what proportion of the members of the •church are in favor of such consolidation. It seems to me that upon the whole merits of the case no further action •should be taken until there has been a fair election. If a majority of the members of the church consider such consolidation desirable, they will undoubtedly elect a board of vestrymen who will take the proceedings necessary to effect the same; if a majority of the members of the church are •opposed to such consolidation, it is difficult to understand why the minority should be allowed to carry it through at all.
The application for a mandamus will be denied with $10 ■costs.
*250 IV. Mandamus to compel rector to give notice of annual election, etc.
N. Y. Supreme Court, First District, Special Term;
April, 1890.
1. Mandamus.] Peremptory writ of mandamus to compel rector of church to give notice, in the time of divine service, for an election; , of church-wardens and vestrymen for the corporation—granted.
2. Forms.'] Forms of affidavit and order therefor.
This was an application on the relation of James Macláury against A. Bloomer Hart, as rector of the church of" St. Stephen, for a peremptory writ of mandamus, directing and commanding the respondent to give due notice on Sunday, April 6, and on Sunday, April 13, 1890, in the time of' divine service, for an election of church-wardens and vestrymen for said corporation, to be held Thursday, April 17.
The moving affidavit set forth the incorporation of the-church, that the relator was, and had for some years past-been a member of said corporation—a male person of full age belonging to said church and corporation for more than' twelve months past; that he had been baptised in the Protestant Episcopal church, and received in membership therein by the right of confirmation ; that he was duly qualified and entitled to vote at the next annual election for church-wardens and vestrymen of said corporation; and was at the time of the application, and had for some time been a vestryman of said church; that the respondent was the-rector thereof; that the statute under which the church was organized provides for the annual election of churchwardens and vestrymen as follows:
“ The male persons qualified as aforesaid, provided they shall also have belonged to such church or congregation for twelve months immediately preceding, shall in every year-thereafter on the day in Easter week so fixed for that pur *251 pose, elect two church-wardens and as many vestrymen, not less than four nor more than eight, as shall have been legally-determined to constitute part of the vestry.”
“That the said statute further provides that:—Notice-shall be given of such election by the rector, if there be one, or if there be none, or he be absent, by the officiating minister, or a church-warden, for two Sundays next previous to the day so fixed, in the time of divine service.”
That the by-laws of said corporation provide as follows ?
“ The annual election by the congregation shall be held on Monday in Easter week immediately after the morning service, when two wardens and eight vestrymen shall be elected by ballot. Notice shall be given by the regular rector, or if there be none by one of the wardens on the two Sundays during divine service next previous to the day of election.”
The complaint further alleged as follows :
“ That by the said statute and by-laws the next annual election shall be held on Monday in Easter week immediately after the morning service, that is, on Monday April 7,1890, and by said statute and by-laws it is made the duty of the respondent, A. Bloomer Hart, to give notice of such election on the two Sundays during divine service, next previous to-the day of election, to wit: on Sunday, March 30, and on Sunday, April 6, 1890.”
“ That on the 30th day of March, 1890, the said Hart, the respondent, as such rector, failed, neglected and refused to give the notice required by said statute and by-laws of the said annual election to be held on Monday, April 7,1890, in Easter week, immediately after morning service, and. refused to give any notice of the annual election.
“ That the said respondent on Sunday, March 30, in the-said church of St. Stephen, in the time of divine service, openly and publicly refused to give said notice of the annual-election as prescribed by the statute and by-laws, and stated that there would be no election in said church this year,, and that it was not his intention to call any meeting of the- *252 .-said church and congregation for the purpose of an annual election.
“ That the relator, together with the senior warden of said church, duly requested the said respondent, as such rector, to give due and proper notice of such election, as required by said statute and by-laws, but said respendent has refused so to do.”
An affidavit in opposition was interposed by the respondent, which, however, admitted most of the material allegations of the moving affidavit.
David Bennett King (Daniel G. Rollins, of counsel) cited in support of the application: People v. Cummings, 72 N. Y. 433; Robertson v. Bullions, 11 Id. 243; Gram v. Prussia, 36 Id. 161; People’s Bk. v. St. Anthony’s Ch., 109 Id. 520; People v. Steele, 2 Barb. 397; People v. Mayor, etc. of N. Y., 10 Wend. 393; McColloch v. Mayor, etc. of Brooklyn, 23 Id., 416; People v. Connely, 42 Hun, 98; People v. Board of Governors of Albany Hospital, 61 Barb. 397; People v. Peck, 11 Wend. 604; M. E. Soc. v. Perry, 51 Hun, 104; Stokes v. Phelps Mission, 47 N. Y. 570; People v. Common Council, 77 Id. 503, 511; People v. Paton, 20 Abb. N. C. 192.
Chas. Blandy, for respondent.
Andrews, J. (without opinion)
“Ordered, that a peremptory writ of mandamus issue out of and under the seal of this court directed to the said A. Bloomer Hart, as the rector of the said corporation of the rector, church-wardens and vestrymen of the Protestant Episcopal Church of St. Stephen in the City of Hew York, commanding him to give due notice, in the time of divine service in said church, on Sunday, April 6, 1890, of the annual election of said corporation to be held on Monday, April 7, 1890, immediately after morning service.”
*253 V. QUO WARRANTO TO OUST TRUSTEES.
N. Y. Common Pleas, Trial Term;
June, 1890.
1. Fine in quo warranto.] It seems that a fine should not be imposed' under Code Civ. Pro. § 1956, on incumbents ousted from office in a corporation, who held under a regularly issued certificate of election, the contest being as to the reception or exclusion of votes.
2. Forms, of pleadings and judgment in action in the nature of quo warranto to try the title of officers of religious corporation.
An action was brought in the court of common pleas fertile city and county of New York by the attorney-general in the name of the people on the relation of James Blackhurst and others against Stephen R. Weeks and others, in the nature of quo wa/rranto, to try the title of the defendants to the offices of church-wardens and vestrymen of the said church of St. Stephen. The complaint was as follows:
I. That the rector, church-wardens and vestrymen of the Protestant Episcopal Church of St. Stephen in the city of New York, are a religious corporation created by and organized under section 1 of chapter 60 of the Laws of 1813 in the State of New York.
II. That said corporation has its church edifice in an excellent locality in said city, to wit: on Forty-sixth street between Fifth and Sixth avenues.
III. That the said corporation has an annual income of upwards of $8,000 from real estate in said city, and the total value of the property owned by the said corporation is up - wards of $150,000 over and above all incumbrances and and debts.
IV. That on the 7th day of April, 1890, at an annual election duly held by the said corporation, pursuant to the-statutes of this State and the articles of incorporation, and the by-laws of said corporation, and pursuant to a peremptory writ of mandamus duly issued from the supreme court, for the election of two church-wardens and eight vestrymen of *254 •said corporation for the term of one year from said date, the relator, James Blaekliurst and one Charles E. Fleming, received respectively the greatest number of votes for the said office of church-wardens, and were duly elected, and the relator James Maclaury, Theodore E. Smith, William G. Gardner, William W. Warren, William J. Smith, and Wood-ruff Smith and one William S. Watson and one Charles Schroeder, received respectively the greatest number of legal votes for the said office of vestrymen and were duly elected.
V. That on the 7th day of April, 1890, the defendant, Stephen E. Weeks, usurped the said office of church-warden, ■and has ever since unlawfully exercised the same and withheld the same from the said relator, James Blackhurst, and that on the said 7th day of April, 1890, the defendants, Thomas F. Cock, Edmund K. Linen, Edmund Luis Mooney, Henry W. Mooney, S. Montgomery Pike and William G. :Smith, respectively usurped the said office of vestrymen and have ever since exercised the same and withheld the same from the said relators James Maclaury, Theodore E. Smith, William G. Gardner, William W. Warren, William J. :Smith, and Woodruff Smith.
Wherefore the plaintiffs demand judgment with costs:
1. That the said defendants, and each of them, have unlawfully usurped the said offices and are not entitled to the ¡same, and that they and each of them be ousted therefrom.
2. That the relators and each of them are entitled to the said offices respectively and to assume the execution of the duties of the same.
The defendants interposed the following answer:
First. They admit that the rector, church-wardens and vestrymen of the Protestant Episcopal Church of St. Stephen in the city of Hew York is a religious corporation created by and organized under the laws of the State of Hew York, but they have no knowledge of information sufficient to form a belief as to whether it is incorporated under chapter 60 of the Laws of 1813.
Second; They admit that said corporation has its- church *255 -edifice in said city on the Forty-sixth street, between Fifth and Sixth avenues.
Third. TJpon information and belief they admit paragraph III. of the complaint.
*Fourth. Except as hereinbefore admitted or denied, they -deny each and every allegation in the complaint contained.
Fifth. They allege that on April 7th, 1890, the defendant Weeks and one Charles E. Fleming were duly elected wardens of said church and corporation, to serve as such until Easter Monday, 1891, and until their successors are •elected, and at the same time the defendants Cock, Linen, Edmund Luis Mooney, S. Montgomery Pike and William G. Smith, together with one Charles Schroeder and one William S. Watson, were duly elected vestrymen of said -•church and corporation to serve as such during the term or time aforesaid, and thereupon at the time of said election the rector of said church duly entered the proceedings of such election in the book of the minutes of the vestry of said corporation and signed his name thereto and offered the same to as many of the electors present as he thought fit, who thereupon signed and certified the same and delivered said certificate to the persons aforesaid, including the •defendants, pursuant to the statute in such case made and provided, which entry and • certificate is in the words and figures following, to wit : On this Monday in Easter week, April 7, 1890, morning prayer was said by the rector and the following gentlemen were duly elected wardens and vestrymen for St. Stephen’s church to serve until Monday in Easter Week, 1890, viz.: For wardens : Stephen B. Weeks, Charles E. Fleming. For vestrymen : Thomas F. Cock, M. • D., Edwin K. Linen, Henry W. Mooney, Edmund Luis Mooney, S. Montgomery Pike, Charles Schroeder, William G. Smith, William E. Watson, M. D. (Signed) A. B. Hart, rector; Stephen B. Weeks, George Mooney, Thomas F„ Cock, Charles Schroeder.
Sixth. That since the. said April 7th, 1890, these -defendants have continuously occupied the offices to which *256 they were respectively elected as aforesaid, and have performed the duties and functions of the same by virtue of the election aforesaid and no person has been elected to succeed them or either of them.
Seventh. For a further and separate defense these defendants allege that notice of said election was give™on April 6th, 1890, pursuant to a peremptory writ of mandamus-issued in a proceeding brought in the supreme court in the name of the people of the state of New York on the relation of James Maclaury, one of the relators in this action, against A. Bloomer Hart, the rector of said church, and not otherwise.
Wherefore these defendants demand that the complaint be dismissed with costs.
The issues were brought to trial at a trial term of the-court before Hon. Joseph F. Halt and a jury, and the following specific questions of fact were thus answered by the jui7-
I. Had the following persons or any of them, and, if so, which, belonged to St. Stephen’s church or congregation for the last twelve months preceding the election of April, 18901 O. M. Bogart, Jr., Frank Blackhurst, Wm. G. Gardner, Charles Miles, Theodore E. Smith, Wm. J. Smith, Woodruff Smith, and Wm. W. Warren \
Answer. Yes, four. Wm. J. Smith, Theodore E. Smith,. Woodruff Smith and O. M. Bogart, Jr.
II. Did the above named persons or any of them, and, if !so, which, each cast his vote in favor of the relators at said election ?
Answer. None.
III. Did the relator, James Blackhurst, and one Charles-E. Fleming receive the greatest number of votes for the office of church-warden, and did the relators James Maclaury, Theodore E. Smith, William G. Gardner, William W. Warren, William J. Smith, and Woodruff Smith, together with one William S. Watson and Charles Sehroeder receive^ *257 the greatest number of votes for the office of vestrymen of St. Stephen’s church at said election ?
Answer. No.
IY. Is yonr verdict for the plaintiffs or for the defendants?
Answer. Plaintiffs.
Y. Did the following persons or any of them, and, if so, which, hire a pew in St. Stephen’s church, for the year last preceding said election: O. M. Bogart, Jr., Theodore E. Smith ?
Answer. Yes> both.
Yl. Did the eight persons first named or any of them, and, if so, which, each offer to cast his vote or ballot in favor of the relator at the said election ?
Answer. Yes, all.
Upon such findings the following judgment was entered ?
It is adjudged that the defendants, Stephen R. Weeks,, Thomas F. Cock, Edward K. Linen, Edmund Luis Mooney and Henry W. Mooney and S. Montgomery Pike, are guilty of usurping, intruding into, and unlawfully holding and exercising the offices of church-warden and vestrymen of the-Protestant Episcopal Church of St. Stephen, in the city of New York, and that they be, and hereby are, and each of them hereby is, ousted and excluded from the said offices,, under any title claimed by virtue of an alleged election for said offices, held April 7, 1890. j
Asrp it is fubtheb adjhdged, David Bennett King, attorney for the defendant, William G-. Smith, consenting thereto, that the said defendant, William G. Smith, be and hereby is, ousted and excluded from the office of vestryman of the Protestant Episcopal Church of St. Stephen, in the city of New York.
And on motion of Booraem, Hamilton & Beckett, attorneys for the relators:
It is fubtheb adjudged, that the said relators, James Blackhurst, James Maclaury, Theodore E. Smith, William Gr. Gardner, William W. Warren, William J, Smith, and *258 Woodruff Smith, recover of the defendants, Stephen E. Weeks, Thomas F. Oock, Edward K. Linen, Edmund Luis Mooney, Henry W. Mooney and S. Montgomery Pike, $116.69, being the costs and disbursements of this action, and that they have an execution therefor.
A motion was subsequently made by the plaintiff to fine the defendants under Code Civ. Pro. § 1956, whereupon the following decision was rendered :
J. F. Daly, J.
Under the decision in the People v. Nolan (65 How. Pr. 468), it is doubtful whether in an ordinary case of contested election, when the incumbents who are ousted hold office by virtue of a regularly issued cerifícate of election and the contest is with regard to the rejection of proper votes or the reception of improper votes,—the court should impose a fine under section 1956 of the Code. There are cases of intrusion into and unlawful usurpation of office without any color of right or authority in which the imposition of a fine would be eminently proper. A distinction should be made between such cases and thé one above referred to.
I also deem it proper to leave the question of a new ■election to the court upon the application for a mandamus. The time for holding it can be decided at a later date.
Application denied.
VI. Mandamus to compel special election to fill vacancies caused by judgment in quo warranto action.
N. Y. Common Pleas, Special Term;
July, 1890.
1. Mandamus to compel special election of church officers.] Peremptory writ of mandamus to compel rector of church to join with trustees in calling special election to fill vacancies caused by judgment in quo warranto action—granted.
2. The same ; referee to superintend election.] A referee appointed to *259 see that such writ is fully obeyed, and to act as inspector of election and judge of qualification of voters.*
■3. Stay of proceedings.] Decision granting stay of proceedings under such writ.
This proceeding was instituted in the name of the People -on the relation of Charles E. Fleming and others, corporators ■and trustees, against A. Bloomer Hart, rector and trustee, for a peremptory mandamus to compel the respondent to join with the relators as trustees in appointing the time for holding an election to supply the vacancy in the office of chúrchwarden and six vacancies in the offices of vestrymen, and in giving notice of such election, etc.
The petition for the writ, after reciting the various proceedings hereinbefore reported, alleged as follows:
That on the evening of June 20, 1890, the said Charles E. Fleming, a church-warden and a trustee of said church, ■and one of the relators, gave notice in writing to said Hart, the rector and a trustee of said church, and to the relators William S. Watson and Charles Schroeder, trustees of said -church, that a meeting of the trustees of said church would be held in the vestry-room of the church on the evening of ■June 23, 1890, at 8 o’clock p. m., for the purpose of appointing a time for holding an election to supply the vacancy in the office of church-warden and the six vacancies in the ■offices of vestrymen of said church.
That the said Hart, on receiving said notice from the hand ■of the relator Fleming, stated to the relators Fleming and Watson that he would not attend the meeting therein referred to.
That the said Hart, on receiving said notice from the hand of the relator Fleming, stated to the relators Fleming and Watson substantially that he would not join in calling an election to fill said vacancies unless required so to do by ■a* mandamus or order of the court.
*260 That on Monday evening, June 23, 1890, at or soon after 8 o’clock p. m., pursuant to said notice, the relatorsattended at the vestry-ioom in said church of St. Stephen, and after waiting there one-half hour or thereabouts, for the-coming of said Hart, and the said Hart having appeared at 8 o’clock, but having refused to take part in said meeting in the vestry-room, the relators adjourned from the said vestry-room in said church to meet at once at the residence of said Hait, 43 West Forty-seventh street, and they together re tired at once to the residence of said Hart, and there-called upon him and requested him as rector and a trustee to join in their meeting then being held, which he refused to do, and thereupon the relators requested said Hart to join with them in appointing a time for holding an election to-supply such vacancies, which the said Hart refused to do, and they then presented to said Hart a certain notice in-writing signed by them and by others who were members of the church, appointing a time for holding an election to supply such vacancies, a copy of which is hereto annexed,, and they requested said Hart to sign his name to the same and thus join with them in appointing a time for holding; said election to supply said vacancies, all of which the said Hart refused to do.
That at the meeting held in the said vestry-room of the church, on the evening of June 23, 1890, the defendant. Hart, the rector, having refused to remain and take part in the meeting and act as presiding officer, the relator, Charles-E. Fleming, as one of the church-wardens, presided over the meeting, and the relator Charles Schroeder was thereupon chosen secretary of said meeting. The relators, in view of the vacancies existing in the vestry of said church, believing it to be essential for the best interests of the church that such vacancies should be filled, resolved that a special election should be appointed by the trustees for July 9,, 1890, to fill such vacancies, and that notice should be given of such special election in due form on Sunday, June 29, 1890, and on Sunday, July 6, 1890, in accordance* *261 with the statute and by-laws of said church, and the relators thereupon signed the aforesaid notice appointing the said •special election and thereafter adjourned as aforesaid to the house of the said defendant, the rector Hart, in order to induce him, if possible, to take part in said meeting and join with them in said action and notice appointing the •said special meeting; that certain of the members of the ••church and congregation happened at the time of said meeting to be present in the church, three of them, to wit, James Blackhnrst, James Maelaury and Hobart B. Jacobs, being •members of the vestry elected at the annual election in the year 1889, and that the said persons, desiring that said special election should be held and the said vacancies filled, requested leave to sign said notice appointing said special election and were permitted so to do.
That the defendant, Hart, has been and is greatly interested in promoting and consummating a scheme whereby the said church of St. Stephen is to be consolidated with the Holy Trinity church at One Hundred and Twenty-second ■street and Lenox avenue, Harlem, four miles distant from the church of St. Stephen, and whereby all the valuable property of the said church of St. Stephen is to be turned •over to the said Holy Trinity church, without any consideration therefor, and whereby the aforesaid church edifice •of St. Stephen is to be sold and discontinued as a place of worship of the Protestant Episcopal Church, and the congregation of said church is to be dissipated and scattered, whereby the defendant, Hart, is to be made rector emeritus ■of the newly-consolidated and more important church, and is to have his salary increased from $1,800 per annum to -$2,500 per annum for life and to be relieved of the active duties and responsibilities of his present rectorshipthat the •said Hart has been using his utmost endeavors to bring about and consummate such scheme of consolidation ; in ■order to further said scheme, as rector of said church, the •said Hart called a special meeting of the vestry of the church of St. Stephen and carefully suppressed and concealed and *262 misrepresented the objects and purposes of said meeting-from almost all the members of said vestry, and with others-refused to permit an adjournment of said special meeting or time for consideration of said proposed scheme of consolidation, and insisted upon urging and enforcing the said scheme through such vestry meeting, without proper and reasonable-opportunity for discussion and consideration, and contrary to the wishes of one half of the members of the then vestry of the church and of a large majority of the congregation of' the church of St. Stephen; that thereafter the said Hart wilfully refused to perform the duty clearly prescribed by the statute for giving notice of the annual election of tliechurch, to be held on April 7, 1890,'and persisted in his-refusal, until he was compelled to give such notice .by a. peremptory writ of mandamus issued out of the supreme-court; that the said Hart presided at such election and wilfully refused to receive the votes of at least four legally qualified electors of said church, said voters all being strongly-opposed and known to said Hart to be opposed to his scheme-of consolidation; that at the said election sixteen votes, were offered for the ticket for church-wardens and vestrymen, composed of those who were opposed to the said Hart’s-aforesaid scheme of consolidation, and eight votes were offered for those in favor of the said Hart’s scheme of consolidation, twenty-four votes having been offered in allj; that the said Hart admitted all the votes offered in favor of' his said ticket, although certain of them were duly challenged for good cause, and refused to receive and count ten of the-votes offered for the ticket which was opposed to his aforesaid scheme of consolidation, and wrongfully and falsely declared that certain persons named on the ticket favoring-his said scheme of consolidation had been elected ; that the relators thoroughly believe and charge that the said Hart’s; refusal to join with them in appointing a special election to fill said vacancies and to give due notice of said special election is a part of his said plan and purpose to promote- and consummate his said scheme of consolidation, whereby *263 he is to be greatly benefited personally and pecuniarily; that it is very important for the interests of the church of St. Stephen, of which the relators are members and duly qualified electors, that the vacancies should be filled without delay, as certain of the property of the church is in danger of being wasted and lost, unless such vacancies are filled and a vestry properly constituted to protect the said property and transact the business of the church ; that in view of the pressing importance of having the special election occur as fixed in the said notice at an early day, the relators desire an order requiring said defendant to show cause, returnable in less than eight days, why a peremptory writ of mandamus should not issue out of this court directed to the said defendant, A. Bloomer Hart, directing and requiring him to join with the other trustees in appointing said special election and to give due notice of said election (should he be present) in accordance with the said statute and the by-laws of said church, and for the granting of such other relief as mentioned in the order applied for.
Daniel G. Rollins and David Bennett Ring (Booraem, Hamilton & Beckett, attorneys) for relators. I. It is the duty of the trustees to appoint a time for holding an election to supply vacancies.
II. The duty of the rector is to join in the call for a special election.
III. If it is the duty of an officer to call a meeting for the election of new officers, and if he neglects or refuses to do so, the court should, by a peremptory writ of mandamus, compel him to perform his duty (People v. Cummings, 72 N. Y. 433; Robertson v. Bullions, 11 Id. 243; Gram v. Prussia, 36 Id. 161; People’s Bk. v. St. Anthony’s Church, 109 Id. 520; People v. Steele, 2 Barb. 397; People v. Mayor, etc. of N. Y., 10 Wend. 393; McColloch v. Mayor, etc. of Brooklyn, 23 Wend. 416; People v. Connely, 42 Hun, 98; People v. Board of Governors of Albany Hos *264 pital, 61 Barb. 397; People ex rel. Kelly v. Common Council, 77 N. Y. 503, 510).
IV. The three relators and the defendants are the only trustees of St. Stephen’s Church, and are the proper persons to appoint the special election (People v. Jones, 17 Wend. 81; Handy v. Hopkins, 59 Md. 157; People v. Phillips, 1 Denio, 388; People v. Thatcher, 55 N. Y. 536; Matter of Pioneer Paper Co., 36 How. 102; Exp. Holmes, 5 Cow. 426; Matter of Union Ins. Co., 22 Wend. 591; Exp. John. B. Desdoity, et al., 1 Wend. 98; Matter of Long Island R. R. Co., 19 Id. 37; People v. Bartlett, 6 Id. 422; Van Amburgh v. Baker, 81 N. Y. 46; P. & R. C. & I. Co. v. Hotchkiss, 82 Id. 471; Hyde v. State, 56 Miss. 665; Vandenburgh v. B. R. R. Co., 29 Hun, 348; Wright v. Commonwealth, 609 Pa. St. 60).
V. It is the duty of the four trustees, the defendant and the three relators, although not a quorum of the board or vestry, to transact ordinary business, to appoint a special election to fill the vacancies (People v. Waddell, 18 Hun, 427; Matter of Wheeler, 2 Abb. Pr. N. S. 362; Hawes v. Darling, L. & R. 18; Adams Case, C. S. & J. 13; Cassell v. Lewis, 78 N. Y. 131; Moore v. Rector St. Thomas, 4 Abb. N. C. 51).
VI. The court should appoint a referee to be present and take charge of the election (King v. Barnes, 51 Hun, 550; Queen v. White, 2 L. R. & B. 562; Queen v. Blizard, 2 Id. 57; Queen v. Owens, 2 E. C. 91; Kinskern v. The Lutheran Churches, 1 Sandf. 537, 561; Robertson v. Bullions, 11 N. Y 243).
VII. A peremptory writ cf mandamus should issue and a referee be appointed to conduct the election.
Gharries Blandy (And/rew J. Shipmcm, attorney) for respondent.
Larremore, Ch. J.
The motion is granted with costs and a reference is ordered to Edward M. Shepard, Esq., to *265 ■supervise and superintend a new election of the board of officers.
The order entered upon this decision was settled in the ■following form: “ Ordered that the said motion be granted ¡and that a peremptory writ of mandamus issue out of and under the seal of this court directed to the said defendant, .A. Bloomer Hart, as rector and trustee of the said corporation, the rector, church-wardens and vestrymen of the Protestant Episcopal church of St. Stephen in the city of New York, commanding him to join with the relators as trustees of the said corporation, in appointing a time for holding a ■special election to supply the vacancy in the office of churchwarden and the six vacancies in the offices of vestrymen in -said church, and directing that the said trustees, to wit, the relators and the defendant, appoint Wednesday, July 23, 1890, at 10 o’clock in the forenoon, and immediately after the morning service in said church, as the time, and the -church edifice of the said church, on Forty-sixth street, between Fifth and Sixth avenues in the city of New York, as the place, for the holding of said special election; and ■directing that the defendant join with the relators in giving notice of such election to occur on July 23, 1890, as afore- ■ said ; and directing that the defendant give said notice of -said special election in the time of divine service on Sunday, ■July 13, 1890, and on Sunday, July 20, 1890, if hg be present at such service, and that if present at said election, he, the defendant, shall in all things relating thereto act under the supervision and superintendence of Edward M. Shepard, Esq., the referee hereinafter appointed, and commanding the ■defendant to do and perform such other and further act or -acts as may be useful and proper in the premises.
“ And it is further ordered, that it be referred to Edward M. Shepard, Esq., of the city of New York, to see that ■said' peremptory writ of mandamus is fully obeyed, and to be and act as inspector of such election and the judge of the ■qualification of voters thereat, to supervise and superintend -the same, and to see to it that said election is fairly held and *266 conducted in all respects in accordance with the law, and that, the said defendant, if he shall preside at such election, shall receive and count all lawful votes offered thereat, and shall reject all unlawful votes thereat offered, and that the said referee shall have power to administer oaths to, and examine persons offering to vote at said election, and to adjourn the said election at any stage of the same to a time to be specified and announced by him, if in his discretion such adjournment shall be needful, expedient and just, and to report his. proceedings and all matters relating to the conduct of such election to this court with all convenient speed.”
The respondent subsequently moved for a stay of proceedings under the writ and order, which came on for hearing on July 22, 1890. Such stay was granted until the. hearing and determination of an appeal to the general term from such order and writ, the following opinion being-rendered:
Bookstaver, J.
On the argument of the motion for a. stay it was contended that the chief judge had passed upon this question when the mandamus proceedings were argued ánd submitted to him, but there is nothing in the papers to which my attention has been called from which I think it can be fairly inferred that he did pass upon that question. There is certainly nothing to show that he refused to grant, a stay. The motion is made under section 2089 of the Code,, which provides that the proceedings upon a writ of mandamus granted at special term may be stayed, etc. The counsel for the defendant contends that the relators have no. standing in court and cannot maintain the mandamus proceedings for the reason that they had no power to call a special election, and therefore what they did on June 23, 1890, was without jurisdiction and void; that the absence-of the rector from the meeting of June 23, 1890, at which, the alleged resolution calling for the election was passed, renders it and all proceedings thereunder void; that this court cannot mandamus the defendant to join in the call for- *267 the special election, nor compel him to give notice of the-proposed election; that the relators who passed the resolution were not elected at the election held on April 17, 1890,. and therefore do not constitute any part of the vestry by virtue of that election; that the old vestry holds over and continues in office notwithstanding the election of the three relators, because it is impossible, as he claims, to designate the three persons they succeed; that the election of April 17, 1890, being called for the choice of eight vestrymen and two wardens, and there being a failure to elect that number,, the whole of the old vestry hold over; that by reason thereof there is nti vacancy to be filled at the proposed new election; that the order granted by the chief judge presents-novel questions of law which ought to be determined before the mandamus is executed ; that the appointment of .a referee to supervise the election, either conjointly with the rector or to control him in his action, is without authority and unlawful.
Some of these questions are of great importance, and are-certainly debatable, and I think should be finally determined before any further complications arise respecting the union of the two churches. On a review’of this order by the general term and by the court of appeals, if necessary, many of the questions raised by the defendants’ counsel can be finally and definitely settled in a much more expeditious manner than if the court compelled the election to proceed at this time, which, I fear, would only lay the foundation for another quo wa/rrcmto action, and involve all parties in further-litigation. In my judgment it is to the interest of all parties that proceedings upon the order and mandamus granted by the chief judge should be stayed at least until the appeal can be heard and determined by the general term of this, court.
*268 NOTE ON THE POWER OF THE COURT TO ENFORCE AND SUPERINTEND THE PROPER EXECUTION OF ITS ADJUDICATIONS.
The contrast between chancery and courts of common law although more commonly defined as existing in questions of jurisdiction, is quite as striking when we compare the difference between what chancery could do in the execution of its orders and decrees, through masters in chancery, receivers, .and managers, and what the courts of common law could do through the sheriff.
blow that common law courts are vested with equity powers, the distinction may be of diminishing importance, but the powers and the proper method of their exercise are of increasing importance.
The precedents below given are from recent well considered cases, and illustrate and sanction the proper procedure.
The case in the text affords another important instance of the application of the same general principles.
I. A receiver may be appointed, ancillary to a foreign liquidator. Forms of order, etc.
In an unreported case in the United States Circuit Court, Southern District of N. Y., 1888, the following order of appointment was made:

[Title, recitals, etc.~\

Ordered, that B. C. of be and he is hereby appointed receiver of all the property, and assets, real and personal and mixed of the said defendant the A. B. Co., (Limited) in the State of New York, with the usual powers and duties of receivers according to law and the practice of this court, including full power and authority to demand, sue for, and collect and receive and take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes and property of every description belonging to the said company within the jurisdiction of this court, and to exercise within such jurisdiction, so far as he may lawfully do so, all the powers vested in the official liquidator of said •corporation by the high court of chancery in England.
At the end of restraining clause:
The appointment of the receiver hereby made, being in support of and ancillary to said appointment of the liquidator by the said high ■ court of chancery in England.
II. The court may sanction a receiver in going abroad on business of Ms t/rust; and man/ designate an official representative for Mm in Ms ■ absence.

Form of petition of a receiver for leave to go abroad.

In the same case the receiver, after appointment, filed the following petition:

*269
[Title of court and cause.}

To the Honorable Judges of the United States Circuit Court for the Southern District of New York:
The petition of R. C. respectfully shows:
That heretofore and on the day of , 18 , your petitioner ■was duly appointed by decree of this court the receiver of the property and assets of the A. B. Company within the jurisdiction of this court, and that he has filed the bond directed to be filed by the said order of appointment and that the said bond has been duly proved and your petitioner has entered upon the discharge of his duties as such receiver and is now actually attending to the same; that he. has devoted himself daily since his appointment to an examination of the accounts, collection of assets and getting the estate here into good order and is prepared to report in every respect, save as to the general condition of the entire estate and the foreign aspects of the case.
That the said A. B. Company is a foreign corporation, organized under the laws of the kingdom of Great Britain and that its main office and principal interests are in the city of London.
That upon the insolvency of said corporation, a provisional liquidator was appointed in the city of London in accordance with the English law, under which said corporation was incorporated by the English High Court of Chancery.
That the foreign liquidator has called upon your petitioner in writing and through counsel for reports and statements of the condition of' affairs in America and also for delivery of assets ; that your petitioner, under advice of counsel, declines to deliver the assets to the foreign, courts.
That various plans and schemes for the re-organization of said A. B. Company had been presented to the English courts, but that all the same are dependent upon the co-operation of the receivership and a settlement with the American creditors.
That your petitioner has through his counsel corresponded with the-parties in interest abroad, but that it is impracticable by such method to intelligently arrive at any result.
That in the judgment of your petitioner it is necessary that he should personally investigate and confer with the officials in England and investigate the condition of the estate there and to investigate and so consider the plans of re-organization referred to and to endeavor himself to advise and assist in making plans and arrangements for the re-organization of said company; and to the proper marshaling of its assets in order that he may properly report to this court for its information of all the same and in order to receive its instruction therein.
That all such information will be useful and necessary to this court. *270 in its action hereafter and in making orders of distribution or of cooperation.
That the complicated condition of affairs renders a personal attendance the most economical course, and in fact delay incident to correspondence may render futile the efforts now making abroad and here.
That your petitioner has so arranged his office and affairs here and has brought them to such a point so that his clerks are able to give all information concerning the records, accounts and condition of the estate that this petitioner could give if personally present, so that it is possible ' for this deponent to make said trip without detriment to the interests of the estate here.
That your petitioner only purposes with leave of court to be absent •about two weeks on shore abroad which, with the necessary time for transit, may make his trip extend to from thirty to thirty-five days, and he is going solely on this business; that deponents counsel are Messrs. M.& N.,whom he will with leave of court designate as his representatives, upon whom all papers may be served as if upon himself as such receiver in his said short absence, and that they are familiar with all the affairs of said estate as completely and thoroughly as your petitioner, is.

Form of order giving receiver leave to go abroad and designating Ms representative here.

Upon such petition, the following order was granted :
Upon the annexed petition of R. 0., the receiver herein, and it appearing to the court to the best interests of this estate that the leave and direction hereinafter mentioned shall be given, it is Ordered, that the prayer of said petition be and the same is hereby granted, and that the receiver herein, R. 0., is hereby authorized to proceed to Europe, ■on the business of this estate as by him stated in his said petition, and that his counsel herein, Messrs. M. & N., be and they are hereby designated as his official representatives in his said absence, upon whom papers and processes may be served as effectually as if upon said receiver personally.
III. The court map direct a receiver to allow inspection of boohs. Form of petition to require that receiver exhibit boohs to creditor.
In the same matter the following petition was presented by a creditor :
To, etc.
The petition of J. H., respectfully shows to said court:
That he is a creditor of the above named defendant and that his claim is for commissions earned and now due him as agent of said company before the commencement of the above entitled action, and amounts ■to as near as he can estimate the sum of $50,000.
That said commissions were earned under the contract your peti *271 tioner had with said company, a copy of which is hereto annexed, marked exhibit A.
That your petitioner caused over twelve hundred persons to do business with the said defendant in purchasing letters of credit and in transacting other business with said defendant, and the defendant was to pay your petitioner three-fourths of one per cent, on all circular drafts and remittances sold by your petitioner or through his instructions, and also one-half of one per cent, on all letters of credit and exchange sold by or through the efEorts of your petitioner for the defendant with the persons he caused to do business with the said defendant over and above any salary petitioner was to receive from the said defendant. That said sum for commissions is now due and payable.
That your petitioner did not keep an account of said sums due your petitioner for said commissions for the reason that there was a full and accurate account kept of the same in the books of account of the defendant.
That your petitioner cannot state the amount due him fully for said commissions or make up a full account, of the same without reference to and an inspection of said books of account and that said books are now in the city of New York in the possession of R 0., the receiver for defendant, appointed by the above named circuit court.
That said books of account show the different allowance due this petitioner for each service performed by him and the aggregate amount due your petitioner.
That your petitioner has no means of showing the amount so due Mm except from said books.
That your petitioner is desirous of making up his account and presenting the same to the proper person, to wit: the said receiver of the defendant, that the same may be passed upon and allowed and paid, and that it is necessary and material to your petitioner that he for that purpose be permitted to examine said books of account and make extracts therefrom.
That heretofore, to wit: on this day of ,18 , at the city of New York, he applied to said R. C., said receiver, by his attorney, and asked leave to so examine said books of account and to be permitted to make extracts therefrom, and that said R. 0. refused to allow your petitioner to see the same or make any extracts therefrom.
That your petitioner is informed and believes that said R. 0. is going to leave the said city of New York for a long stay in Europe, out of the jurisdiction of said court, and your petitioner desires to be permitted to have such examination and make said extracts before he •so leaves.
Your petitioner therefore prays that this court shall make an order *272 founded on this petition and the pleadings and proceedings on file im the above entitled action, that your petitioner be permitted to examine said books of account and to make extracts therefrom at such place- and time as this said court may direct, and that the said R. 0., as such receiver, be directed by an order of this said court to exhibit the said books of account to your petitioner and his attorneys and counsel for such purpose, and that your petitioner have such other and further: relief or order in the premises as may be proper and just.
Form of order that receiver allow inspection of boohs, etc. Upon such petition the following order was granted:

[Title of court and cause] [At, etc.]

On reading and filing the order to show cause in this action on behalf of J. H., dated day of , 18 , and the affidavit of said J. H., annexed thereto, verified the day of , 18 , and a copy of the contract thereto attached, and on all the pleadings and. proceedings heretofore made and had in this action, and on due proof: of service of said order to show cause and affidavit annexed thereto,, and on motion of A. T., of counsel for said petitioner, J. H., and no one appearing to oppose, and the motion in said matter having been.-, regularly reached on the calendar,
It is Obdeked, that R. 0., receiver of defendant’s property and-’, effects, exhibit to said J. H., his solicitor and counsel in this action and their clerks and assistants, all the books of account of the defendant in the above entitled action forthwith and at all other proper times during business hours at some proper place in the city of New York, and allow said J. H., and said solicitor and counsel and their clerks and assistants,, to make extracts therefrom and to examine said books.
And it is further ordered that the said R. 0., said receiver, shall not. remove any of the books of account of said defendant out of the Southern District of New York of the Circuit Court of the United States, without further order of this court.

Another form of petition for order requiring receiver to allow exam-ination of boohs

*

*273 Supreme Court, County of.
In the Matter of the application of J. T., for an Order or Direction to R. C., as Receiver of Y. Z.
To the Supreme Court of New York :
The petition of A. B., by M. N., his attorney, respectfully shows i
I. That said R. C., above named, was appointed receiver of the Y. Z.? above named, by order of this court on the day of , 18 $ and continued as said receiver by interlocutory judgment of this court on the day of , 18 , and that said. R. C. qualified as said receiver by filing his approved bond on the day of ,18 , and is now acting as such.
II. That your petitioner is a judgment creditor of said Y. Z. for: $ , by virtue of a judgment of the court of , dated! the day of , 18 , that said judgment was duly docketed: in county, that execution was duly issued thereon to the sheriff" of said county and returned wholly unsatisfied on the day of , 18 , that said judgment was recovered for a quarter,’s rent due and payable ,18 , of petitioner’s premises, No. street,, in city, held by said Y. Z. under a lease to it from petitioner, dated', the day of , 18 , that said company occupied said premises for its business and covenanted in said lease to pay the yearly rent; of $ in quarterly payments on the regular quarter days, etc., in each year. _ That said R. C. was an officer of said company- and knew of said lease and the terms thereof.
.- HI. That petitioner has endeavored without success to learn facts; to which he was entitled to knowledge as said creditor as to the stock- • holders and their holdings of said company, as appears by the annexed! affidavit of petitioner’s attorney, the allegations of which are hereby/ made part of this petition. , 1
Where poke, petitioner prays this court to make an order directing said R. C., as said receiver, to allow petitioner or his attorney to examine the book of stockholders of said Y. Z. and their holdings, and make extracts therefrom; and for such other" and further relief as may be just.

[Date.] [Signature.]

Affidavit of attorney in corroboration.

[Title as above.]

[Venue.]

M. N., being duly sworn, says he is attorney for A. B., petitioner *274 herein, that said- A. B. was made a party to the action of M. v. Y. Z. in this court, in which said receiver was appointed by service on deponent as said attorney on the day of , 18 , a copy of the order appointing said receiver, said order also containing an injunction restraining said A. B. as a creditor, and that deponent also duly served a notice of appearance in said action for said A. B., on B. F. E., Esq., plaintiff’s attorney therein, on the day of , 18 . That on the day of , 18 , deponent called on said R. 0., on behalf of petitioner herein, and asked to see the book of stockholders and their holdings of stock of said company required to be kept by statute; that said R. 0. allowed deponent to see said book, but refused to allow deponent to make extracts therefrom; that said R. 0. is also vice-president and secretary of said company, as appears by annual report filed ,18 , on information and belief that said company has not as yet been dissolved by judgment and that deponent does not know whether the possession of the said book is the possession of the receiver or of the vice-president and secretary, but believes it to be the possession of the said receiver; that said R. C. knew at the time of deponent’s said request that deponent was attorney for said A. B., and that said A. B. was a creditor of said company; that said receiver has refused to pay rent fer petitioner’s said premises unless ordered so to do by the court ; that deponent believes it tobe necessary and important for petitioner to be allowed to make extracts from said book of stockholders, etc., for the protection of his rights, and that no previous application has been made for this order.
'[Jurat. ]
IV. The court may direct a receiver holding stock as an asset in the trust, to vote upon it at an election.

Form of order appointing receiver of corporate stock with direction to vote at corporate election.

In American Investment Co. v. Yost, N. Y. Superior Ct., Special Term, July 25, 1890, the following order was. made by the court. (O’Gorman, J.):
[Title and recitals.] And due deliberation having been- had ; it appearing from the complaint herein that the plaintiffs demand judgment against the defendants restraining the commission or continuance of acts, the commission or continuance of which during the pendency of this action would produce injury to the plaintiffs, and it also appearing from said complaint that the defendants are about to vote upon and transfer certain shares of stock, the certificates to which are held by them in violation of an agreement specified in said complaint, and in violation of the rights of the plaintiffs ; and it further appearing that the relations between the contending parties to this suit are hostile and *275 "their combined action for the common advantage of the Tost Writing Machine Company and of themselves is not now to be expected.
Now, on motion of Poster & Ackley, attorneys for the plaintiffs,
It is ordered, that the injunction heretofore granted be and the ¡same hereby is continued until the entry of final judgment herein, and that the above named defendants, George W. N. Yost, individually and ¡as trustee ; Henry Cummins, individually and as trustee; C. Godfrey Patterson, individually and as trustee; William T. Black, William H. Ritter, John Cummins, R. C. Flower, John Doe and Richard Roe, ¡and their servants and agents, and all persons who have, since February >6, 1889, acquired stock in the Yost Writing Machine Company from •any one or more of said defendants, either directly from such defendant or through the acquisition of the legal title to or any interest in stock in or to which such defendant had any legal or equitable interest, or option to purchase or right of redemption, and each of such persons be and the same hereby are enjoined and restrained until the entry of final judgment herein from voting or attempting to vote at any meeting •or pretended meeting of the stockholders of the Yost Writing Machine Company for the election of officers or for any other purpose for any board of directors or managing trustees which board does not include ■George W. N. Yost, Henry Cummins, John A. Bagley, Hermon V. Cramer and Charles V. Culver, and from voting at any such meeting •or pretended meeting any ballot which does not contain the names of ••said Yost, Cummins, Bagley, Cramer and Culver as persons voted for for the position of directors or managing trustees of the Yost Writing Machine Company, and from voting on more than two-fifths in amount •of any shares of stock in the Yost Writing Machine Company which may be held by them or any of them, or to which they or any one of "them holds a proxy to vote or in or to which any one or more of them has any interest, legal, equitable or by way of option to purchase, or by right of redemption and from preventing or protesting against or in •any manner interfering with John A. Bagley, Hermon Y. Cramer, and Charles V. Culver in case said Bagley, Cramer and Culver desire to vote upon three-fifths in amount of any shares of stock in such company which may be held by said defendants' or any of them or any of their agents or in which any of said defendants may have an interest •as aforesaid, and from transferring, selling or hypothecating or consenting to the sale, transfer or hypothecation to any one except the plaintiffs of any shares of the stock of said Yost Writing Machine Company; but defendants John Cummins, Black and Ritter may vote on and •transfer any stock transferred to them before February 6th, 1889, in which the other defendants never had an interest.
And it is further ordered that John Whalen, Esq., be and the same *276 hereby is appointed, upon filing a bond in the sum of six thousand dollars ($6,000), a receiver of all the property, assets and franchises of the; Tost Writing Machine Company pending this action and until the entry of final judgment herein.
And it is further ordered that the same person be and the same-hereby is appointed a receiver of all the shares of stock of the YostWriting Machine Company in which said defendants or other persons-above named have any interest, legal or equitable or by way of option to purchase or right of redemption or by holding a proxy to vote upon the same, of all proxies to vote upon shares of stock held by said defendants or any person above named ; and that said last named receiver be and the same hereby is instructed to vote upon said stock and proxies at any meeting of the stockholders of the Yost Writing-Machine Company for the election of officers or trustees and for the following board of directors or managing trustees of said Yost Writing, Machine Company : George W. N. Yost, Henry Cummins, John A. Bagley, Hermon Y. Cramer and Charles Y. Culver.
And it is further ordered that the plaintiffs recover of the defendants-$10 costs of this motion, and that defendants or either of them have leave to move on four days notice for an increase of security on the-injunction, or for any other relief under this order or amendatory thereof.

 The act as amended is as follows :
§ 3. Any two or more of the corporations, aforesaid, are hereby-authorized to unite and consolidate themselves into a single corporation of the denomination to which at least one of such corporations shall belong, in the manner following: The said corporations may enter into an agreement under their respective corporate seals, for the union and consolidation of the said corporations, setting forth the terms and con'ditions thereof, the name of the proposed new corporation, the church or denomination to which it shall belong, the names of the persons who shall be the church-wardens and véstrymen, or elders and deacons or trustees, or other officers, as the case may be, until the first annual election of the proposed new corporation, and fixing the day of such election. But in the case of the Protestant Episcopal churches, nc>
*232 such agreement shall be valid unless approved by the bishop and standing committee of the diocese in which such churches are situated; and in case of Presbyterian churches, a union under this act shall not be valid unless approved by the presbytery with which such churches are connected. Each of the said corporations may make its separate petition to the supreme court in the judicial district in which such corporations are situated, for an order for such union and consolidation; setting forth in such petition the reason for such union and consolidation, the agreement made as hereinbefore provided, and a statement of all its property, real and personal, all its debts and liabilities, and the amount and sources of its annual income. Upon such petition, from each of such corporations so proposing to be united and consolidated, and upon the said agreement satisfactorily proved or certified, the supreme court may, in case it shall deem it proper, make an order for the union and consolidation of such corporations, determining all the terms and conditions and provisions thereof. All parties interested therein may be heard on such petition. When such order is made and entered according to the practice of the court, the said corporations shall be united and consolidated into one corporation by the name designated in the order, and it shall have all the rights and powers, ■and be subject to all the obligations of religious corporations under the .act to which this is supplementary, and the acts, amendatory thereof and supplementary thereto.

 The order entered upon this decision was ‘ ‘ without prejudice to the-right of the relator to renew said application.”

It has heretofore been the law that a majority of the body or board, duly assembled, are a quorum; and a majority of such a quorum may perform a corporate act. 1 E. S. 599, § 6.
The general corporation law, L. 1890, p. 1063, c. 563, § 17 (to take effect May 1, 1891), obscures if it does not change this rule. That section reads as follows : When the corporate powers of any corporation are to be exercised by any particular body or number of persons, a majority of such body or persons, if it be not otherwise provided by law, shall be a quorum ; and every decision of a majority of such persons duly assembled as a board, shall be valid as a corporate act.
If the phrase “ a majority of such persons,” means a majority of the "whole number, it might be contended, perhaps, that a corporate act required the votes as well as the presence of a majority of the members : it being at the time of this revision a disputed question in parliamentary law whether the language of the United States Constitution does not bear this implication in respect to the quorum and majority vote of the House of Representatives.
The language of the Revised Statutes was clear. It is not clear that the more condensed expression of the new act was intended to change the rule ; and a familiar principle of interpretation therefore discourages the inference that a change was intended. Davis v. Davis, 75 N. Y. 221.

 See note on the power of the court to supervise the execution of its adjudications at the end of this case.

 The power of the court to direct its own officer, such as a. receiver or an attorney, to make discovery, does not need the support of the statute and rules. This form, is from Matter of Tiebout, 19 Weekly Dig. 570, where it was held that the authority of the court to-compel a receiver of the assets of a corporation to allow a creditor of such corporation to make extracts from the corporation books, does not rest on the technical rights of a stockholder or creditor, as between, himself and the corporation, under the statutes relating to corporations, but upon grounds of justice and equity in administering the trust in. the hands of the receiver, and the granting or refusing an application. *273 for that purpose is within the discretion of the court. And that upon this petition, supported by the affidavit of the attorney, it was error to, refuse to grant it.